**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JEREMY SALSBURG; XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC., | Case No. 1:21-cv-06343 |
| Plaintiffs, | Hon. Matthew F. Kennelly |
| v. | |
| INVESCO CAPITAL MANAGEMENT, LLC. | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT INVESCO CAPITAL MANAGEMENT, LLC'S MOTION TO DISMISS**
**CASE NO. 1:21-CV-06343 UNDER FED. R. CIV. P. 12(B)(6)**

Nicholas M. Berg
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Nicholas.Berg@ropesgray.com

*Attorney for Defendant Invesco Capital Management, LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I.      STATEMENT OF FACTS ......................................................................................... 3

II.     ARGUMENT ............................................................................................................. 6

  A.   Plaintiffs Fail to Plead Breach of Contract (Count I) ............................................. 7

    1.   Plaintiffs Do Not Sufficiently Plead the Existence of a Contract with Invesco ............ 7

    2.   Plaintiffs Do Not Sufficiently Plead the Remaining Elements of a Breach of Contract Claim ...................................................................................................................... 9

  B.   Plaintiffs Fail to Plead Gross Negligence (Count II) .......................................... 122

    1.   Plaintiffs Fail to Allege a Duty on Behalf of Invesco ........................................ 12

    2.   Plaintiffs Fail to Allege Any Breach ................................................................... 14

    3.   Plaintiffs Fail to Allege that Invesco Proximately Caused Damages ........................ 15

  C.   Plaintiffs Fail to Plead Negligent Misrepresentation (Count III) ...................... 16

    1.   The Heightened Pleading Standard of Rule 9(b) Applies to Plaintiffs' Averments of Fraud ..................................................................................................................... 16

    2.   Plaintiffs Fail to Plead a False Statement of Material Fact ................................... 17

    3.   Plaintiffs Fail to Allege a Duty Owed by Invesco ............................................. 18

    4.   Plaintiffs Fail to Allege that Invesco Intended to Induce Them to Act ...................... 19

    5.   Plaintiffs Fail to Allege They Reasonably Relied on Data ........................................ 19

    6.   Plaintiffs Fail to Allege Damages Caused by Reliance ............................................ 20

CONCLUSION .................................................................................................................... 20

## Table of Authorities

Page(s)

### Cases

*Academy Chicago Publishers v. Cheever*,
 578 N.E.2d 981 (Ill. 1991) ...................................................................................8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................6

*Bajwa v. Metro Life Ins. Co.*,
 804 N.E.2d 519 (Ill. 2004) .................................................................................13

*Bastian v. Petren Resources Corp.*,
 892 F.2d 680 (7th Cir. 1990) ..............................................................................15

*Bieruta v. Klein Creek Corp.*,
 770 N.E.2d 1175 (Ill. App. Ct. 1st Dist. 2002) ..................................................12

*Bissessur v. Ind. Univ. Bd. of Trs.*,
 581 F.3d 599 (7th Cir. 2009) .....................................................................7, 9, 19

*Bd. of Educ. of City of Chicago v. A, C and S, Inc.*,
 546 N.E.2d 580 (Ill. 1989) .................................................................................18

*Borsellino v. Goldman Sachs Group, Inc.*,
 477 F.3d 502 (7th Cir. 2007) ...............................................................................7

*Browning v. Eckland Consultants, Inc.*,
 No. 1-03-3607, 2004 WL 2687961 (Ill. App. Ct. 1st Dist. Aug. 13, 2004)........16, 18, 19

*Camp v. TNT Logistics Corp.*,
 553 F.3d 502 (7th Cir. 2009) ..............................................................................14

*City of Chicago v. Beretta U.S.A. Corp.*,
 821 N.E.2d 1099 (Ill. 2004) ...............................................................................14

*Contact Lenses Unlimited, Inc. v. Johnson*,
 531 N.E.2d 928 (Ill. App. Ct. 1st Dist. 1988) ....................................................14

*D.S.A. Fin. Corp. v. County of Cook*,
 801 N.E.2d 1075 (Ill. App. Ct. 1st Dist. 2003) ..................................................20

*DiLeo v. Ernst & Young*,
 901 F.2d 624 (7th Cir. 1990) ..............................................................................18

*DiLorenzo v. Valve & Primer Corp.*,
 807 N.E.2d 673 (Ill. App. Ct. 1st Dist. 2004) ......................................................7

*Edwards v. Sequoia Fund, Inc.*,
No. 18 Civ. 4501 (GBD), 2018 WL 6039815 (S.D.N.Y. Oct. 18, 2018), aff'd,
938 F.3d 8 (2d Cir. 2019)..........................................................................................9

*Emerald Invs. LP v. Equitable Life Assurance Soc'y of U.S.*,
No. 04 C 4285, 2005 WL 3470296 (N.D. Ill. Dec. 19, 2005) ..................................9

*Fed. Deposit Ins. Corp. v. Giannoulias*,
918 F. Supp. 2d 768 (N.D. Ill. 2013) ......................................................................12

*Fox Assocs. v. Robert Half Int'l*,
777 N.E.2d 603 (Ill. App. Ct. 1st Dist. 2002) .........................................................16

*Gammons v. Crown Castle USA, Inc.*,
No. 15-CV-02310, 2016 WL 1270453 (N.D. Ill. Mar. 31, 2016)...............12, 13, 18

*George v. Kraft Foods Glob., Inc.*,
674 F. Supp. 2d 1031 (N.D. Ill. 2009) ......................................................................4

*Gonzalez v. ADT*,
161 F.Supp.3d 648 (N.D. Ind. 2016) ........................................................................7

*Grass v. Homann*,
474 N.E.2d 711 (Ill. App. Ct. 4th Dist. 1984)........................................................20

*H&S Bldg. Inv., LLC v. Irani*,
No. 1-17-0614, 2017 WL 6762434 (Ill. App. Ct. 1st Dist. Dec. 29, 2017) ............20

*Heritage Commons Partners v. Summit*,
No. 85 C 10713, 1987 WL 6598 (N.D. Ill. Feb. 12, 1987)........................................8

*Holubek v. City of Chicago*,
497 N.E.2d 348 (Ill. App. Ct. 1st Dist. 1986).................................................12, 19

*In Retail Fund Algonquin Commons, L.L.C. v. Abercrombie & Fitch Stores, Inc.*,
No. 09 C 5824, 2010 WL 1874054 (N.D. Ill. May 10, 2010) .................................16

*Int'l Supply Co. v. Campbell*,
907 N.E.2d 478 (Ill. App. Ct. 3d Dist. 2009)...........................................................7

*Katz-Crank v. Haskett*,
843 F.3d 641 (7th Cir. 2016) .............................................................................6, 7

*Knowles v. TD Ameritrade Holding Corp.*,
427 F.Supp.3d 1070 (D. Neb. 2019)........................................................................12

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003) ..................................................................................9

*Muehlbauer v. General Motors Corp.*,
    431 F.Supp.2d 847 (N.D. Ill. 2006) ........................................................................17

*Nat'l Tech., Inc. v. Repcentric Sols.*,
    No. 13 C 1819, 2013 WL 6671796 (N.D. Ill. Dec. 18, 2013) ................................10

*Plestsov v. GTS Transportation Corp.*,
    No. 20-CV-1847, 2021 WL 534666 (N.D. Ill. Feb. 12, 2021) ...............................17

*Sadler v. Retail Prop. of Am., Inc.*,
    No. 12 C 5882, 2014 WL 2598804 (N.D. Ill. 2014).........................................15, 20

*Samoylovich v. City of Chicago*,
    No. 1-17-2962, 2019 WL 1462194 (Ill. App. Ct. 1st Dist. May 29, 2019) .......12, 15

*Sequel Capital, LLC v. Pearson*,
    No. 07-CV-2642, 2010 WL 4008161 (N.D. Ill. Oct. 13, 2010) ............................17

*Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*,
    No. 653665/2011, 2012 WL 6929336 (N.Y. Sup. 2012)..........................................9

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ....................................................................................6

*Swiss Bank Corp. v. Dresser Indus., Inc.*,
    942 F. Supp. 398 (N.D. Ill. 1996) .............................................................................8

*Talbert v. Home Savings Bank of America, F.A.*,
    638 N.E.2d 354 (Ill. App. Ct. 1st Dist. 1994) .......................................................8, 11

*TAS Distrib. Co. v. Cummins Engine Co.*,
    491 F.3d 625 (7th Cir. 2007) ..................................................................................11

*Virnich v. Vorwald*,
    664 F.3d 206 (7th Cir. 2011) ....................................................................................7

*Ziarko v. Soo Line R.R. Co.*,
    641 N.E.2d 402 (Ill. 1994) ......................................................................................12

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................6, 16, 17, 18

Fed. R. Civ. P. 10(c) ...................................................................................................3

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 6, 20

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Invesco Capital Management, LLC ("Invesco"), by and through its attorneys, Ropes & Gray LLP, respectfully submits this Memorandum in Support of its Motion to Dismiss the Complaint brought by Jeremy Salsburg, XDG Trading LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc. (collectively, "Plaintiffs"). The complaint brings claims for breach of contract, gross negligence, and negligent misrepresentation, each of which is insufficiently pled and warrants dismissal under Rule 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs engage in the speculative and risk-filled business of arbitrage trading in public securities. An arbitrage trader's success (or failure) depends on his or her ability to very quickly identify and exploit short-lived and often tiny differences in the price of particular publicly-traded securities for their own gain. To identify those variations, arbitrage traders rely on any and all information available to them, which they hope will allow them to exploit pricing inefficiencies before the market can react. But as any retail investor with a 401(k) knows, obtaining profits by speculating on short-term price swings of publicly-traded securities is hardly assured, and significant losses are all too common.

Here, Plaintiffs claim they lost over $2.5 million in speculative arbitrage trading by relying on the accuracy of a "basket file" that is disseminated on a routine basis to certain authorized participants of a large, exchange-traded fund sponsored by Invesco, the Invesco QQQ Trust$^{SM}$, Series 1 (the "Trust"). Plaintiffs assert—without support—that the basket file for the Trust that was disseminated on August 28, 2020 was somehow "manipulated," or "doctored," although Plaintiffs fail to allege anything Invesco would stand to gain from such conduct.

But, in fact, as the Prospectus attached to the complaint and other judicially noticeable documents make clear, Plaintiffs misunderstand and misconstrue the very nature and purpose of

the basket file. That confusion, whether real or deliberate, is fatal to their claims. The basket file is intended to inform a select class of market participants with whom Invesco has preexisting contracts, referred to as "authorized participants," of the composition of securities that those authorized participants—and *only* those authorized participants, not Plaintiffs—may deliver or receive in exchange for a large block of shares of the Trust, called "Creation Units." The basket file is an offer to purchase or sell Creation Units that is made to these select market participants, and *not* a representation to anyone, much less arbitrage traders like Plaintiffs, that the file represents the exact composition of the Trust, as Plaintiffs claim. For that reason, Invesco publicly and specifically *disclaims* liability with respect to the accuracy of the file.

Plaintiffs' complaint fails for a myriad of other reasons, too. The 99-page "contract" Plaintiffs attach to their complaint is the Trust's prospectus (the "Prospectus"). Courts across the country have consistently held that a prospectus is not a contract supported by a meeting of the minds, but a unilateral communication required by government regulators. Further, the Prospectus attached to the complaint is dated five months *after* Plaintiffs claim to have traded and would not have been a viable "contract" at the time Plaintiffs' engaged in their speculative arbitrage trading strategy. And even if it could form the basis for Plaintiffs' allegations, the terms of the Prospectus actually undercut all of Plaintiffs' claims.

Stripped bare of their inaccuracies and mistakes, Plaintiffs' claims against Invesco rest on an opportunistic and highly novel theory of liability that not only has no basis in law, but also would have significant and detrimental consequences across the fund industry as a whole. Plaintiffs ask this Court to force Invesco, a fund manager, to insure them against their speculative arbitrage trading losses in publicly traded securities *outside* of the Trust. There is not, of course, any allegation that Invesco knew that Plaintiffs were engaged in a speculative arbitrage trading

strategy that exposed Plaintiffs to millions in losses. To hold that Invesco could somehow be liable for Plaintiffs' reckless arbitrage trading strategy would not only be contrary to the law, as well as the Prospectus and other judicially noticeable documents governing the Trust, but it would also extend Invesco's and other fund managers' liability to third parties trading outside of a fund to a potentially infinite degree for any error, no matter how slight or how quickly corrected.

For all of these reasons, and those set forth below, Invesco respectfully requests this Court grant its Motion to Dismiss.

## I.  STATEMENT OF FACTS

Invesco is the sponsor of the Trust, a unit investment trust established on March 1, 1999 that issues fractional undivided interests in the Trust called Invesco QQQ Shares. Dkt No. 1-1 (Compl., Ex. A, 3).[1] The Trust's shares represent fractional undivided ownership interests in the portfolio of stocks held by the Trust (the "Portfolio"). *Id.* The Trust holds all of the stocks of the NASDAQ-100 Index® (the "Index"). *Id.* The "investment objective of the Trust is to seek to track the investment results, before fees and expenses, of the Index" but "[t]here can be no assurance that this investment objective will be met fully." *Id.* A trustee, or its delegate, is responsible for issuing distributions from the Trust, adjusting its composition to mirror the Index, and otherwise managing it, among other things (the "Trustee"). *Id.* at 3, 11.

The Trust continuously issues and redeems in-kind shares only in Creation Units, which amount to 50,000 shares of the Trust and are issued to parties who deposit with the Trustee a specified portfolio of NASDAQ-100 Index securities and a cash payment (the "Portfolio Deposit"). *Id*. at 4–5. The only parties that can place orders for Creation Units are those with

---

[1] The Trust's January 31, 2021 Prospectus is attached to the Complaint as Exhibit A. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

whom the Trust has an Invesco QQQ Participant Agreement ("Participant Agreement"), which include only (1) broker-dealers or other participants in the Invesco QQQ clearing process ("Participating Parties") or, (2) DTC Participants[2]. *Id.* at 5, 43. The Participant Agreement "authorizes the Trustee to transmit to NSCC[3] . . . such trade instructions as are necessary to effect the Participating Party's creation order" or "redemption order." *Id.* at 43, 49.

Critically for purposes of this Motion, each day, the names and required number of shares for a Portfolio Deposit are made available to Participating Parties (the "Basket"), and such information allows those Participating Parties to place orders for Creation Units. *Id.* at 40. The roles and responsibilities of the Trustee and Sponsor as to this process and the management of the Trust, including their obligations to the Trust's beneficial owners, are set forth in the Standard Terms and Conditions of Trust[4] (the "Trust Agreement"). Specifically, at the close of the trading day on the NASDAQ, *i.e.*, the "Evaluation Time," the Trustee makes a host of calculations, including adjusting for stock splits, which are necessary to determine the Portfolio Deposit and the Basket. Berg Dec., Ex. A, § 2.04(g), (k) ("Portfolio and Portfolio Deposit Adjustments"). The Trustee then disseminates the Basket to Participating Parties via the NSCC each business day. *Id.* § 2.04(k). Invesco relies on the calculations made at the Evaluation Time by the Trustee, including the Basket. In fact, per the Trust Agreement, Invesco "may rely in good faith on any paper, order,

---

[2] "DTC" refers to the Depository Trust Company, a limited purpose trust company. Dkt No. 1-1 (Compl. Ex. A, 10). A "DTC Participant" is an individual who creates Portfolio Deposits outside of the Invesco QQQ clearing process, via Depository Trust Company facilities. *Id.* at 10, 43.

[3] "NSCC" refers to the National Securities Clearing Corporation, a clearing agency that is registered with the SEC. *Id.* at 17.

[4] The Standard Terms and Conditions of Trust dated March 1, 1999, which is attached as Exhibit A to the Declaration of Nicholas M. Berg ("Berg Decl."), is publicly available on the SEC's website and was included as an exhibit to the Trust's registration statement filed on March 9, 1999. Registration Statement, File No. 811-8947, Exhibit A(1)(a), available at https://www.sec.gov/Archives/edgar/data/1067839/0001047469-99-008994.txt. Where documents are part of the public record and will aid in the efficient disposition of a case, the court may properly take judicial notice of them. *See George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009). In addition, Plaintiffs reference the Trust's registration statement in the Complaint. Compl. ¶ 7.

notice, list, affidavit, receipt, evaluation [and] opinion . . . submitted to it by the Trustee." *Id.* § 7.04(a) ("Liability of Sponsor and Indemnification"). The Trust Agreement also expressly allows Invesco to "rely on an evaluation furnished by the Trustee," and, importantly for purposes of this Motion, explicitly states that the Sponsor [*i.e.*, Invesco] shall "have no responsibility for the accuracy" of *any* evaluation provided by the Trustee. *Id.* § 4.03 ("Responsibility of the Trustee") (emphasis added). The Trust Agreement states further that "[t]he Sponsor [*i.e.*, Invesco] shall in no event be deemed to have assumed or incurred any liability, duty, or obligation, to any Beneficial Owner or to the Trustee other than as expressly provided for herein." *Id.* § 7.04(a). And the Trust Agreement is devoid of any liability, duty, or obligation that Invesco has to Plaintiffs concerning the Basket. Indeed, Invesco is expressly permitted to rely on the Basket provided by the Trustee and explicitly disclaims any responsibility to anyone for its accuracy. *Id.* §§ 2.04(g), 2.04(k), 4.03, 7.04(a).

Plaintiffs allege that they use the Basket to engage in algorithmic arbitrage trading. Dkt. 1-1 (Compl. ¶¶ 1, 13, 26). Plaintiffs further allege that "[o]n August 31, 2020, there were two stock splits which impacted the Index which required changes by Defendant to the share quantities in the Basket." *Id.* ¶ 20. They allege that Invesco transmitted a data file on August 28, 2020 which inaccurately reflected the quantities of Apple and Tesla shares in the Basket, and "reduc[ed] the quantities of each and every one of the other 101 Basket member stocks by a factor of 1.55 to perfectly offset the inaccurately inflated share quantities of Apple and Tesla so that the data file error could not be easily detected," although Plaintiffs fail to offer any motive for this alleged cover-up. *Id.* ¶¶ 23–25. Plaintiffs then allege that "[a]t approximately 11am eastern on August 31, 2020, [Invesco] issued another, corrected data file . . . accurately reflecting the splits." *Id.* ¶ 27. Plaintiffs claim that this failure resulted in their suffering "substantial monetary losses of more

than $2,500,000." *Id.* ¶¶ 1, 29, 36, 40, 48.

After their speculative arbitrage trading strategy proved unsuccessful, Plaintiffs filed a complaint against Invesco in the Circuit Court of the Eighteenth Judicial Circuit in DuPage County, Illinois on July 19, 2021, serving Invesco on July 30, 2021. On September 16, 2021, Plaintiffs filed an amended complaint, which added Plaintiff First Horizon Bank as Trustee for Jet Support Services, Inc. and alleges three counts: (1) breach of contract, (2) gross negligence, and (3) negligent misrepresentation based on Plaintiffs' allegation that Invesco provided "wrongfully manipulated, engineered and/or doctored" data on August 28, 2020 via the Basket (the "Complaint"). *Id.* ¶¶ 6, 28. On November 29, 2021, Invesco removed the case to this Court.

Invesco now moves this Court to dismiss Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

## II. ARGUMENT

The Court should dismiss the Complaint with prejudice under Rule 12(b)(6) because Plaintiffs have failed to adequately allege the existence of any contract with Invesco, any misrepresentation by Invesco, any duty to Plaintiffs by Invesco, or any facts indicating that any action taken by Invesco caused their purported losses. To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*). Plaintiffs "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The court will take all acts alleged by plaintiffs as true and draw all reasonable inferences from those facts in plaintiffs' favor, but conclusory allegations merely reciting the elements of a claim are not entitled to this presumption. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d

206, 212 (7th Cir. 2011). Additionally, because Plaintiffs' claims each contain averments of fraud, the allegations contained therein must be stated with particularity under Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Gonzalez v. ADT*, 161 F.Supp.3d 648, 658–59 (N.D. Ind. 2016). Plaintiffs' pleading falls significantly short of this standard for multiple, independent reasons.

### A. Plaintiffs Fail to Plead Breach of Contract (Count I)

First, Plaintiffs' breach of contract claim is facially insufficient, most fundamentally because they have not and cannot establish the existence of any contract with Invesco. Under Illinois law, in order "to prevail on a breach of contract claim, a plaintiff must plead and prove that: (1) a contract exists, (2) plaintiff performed his obligations under the contract, (3) defendant breached the contract, and (4) plaintiff sustained damages as a result of defendant's breach." *Int'l Supply Co. v. Campbell*, 907 N.E.2d 478, 487 (Ill. App. Ct. 3d Dist. 2009). A formulaic or threadbare recitation of the elements of a cause of action is insufficient to state a claim. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602–03 (7th Cir. 2009). Plaintiffs' conclusory allegations are insufficient to support each element.

### 1. Plaintiffs Do Not Sufficiently Plead the Existence of a Contract with Invesco

First, Plaintiffs do not sufficiently plead the first element, the *sine qua non* of a breach of contract claim, the existence of an actual contract between the parties. Under Illinois law, "[a] contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 1st Dist. 2004) (quoting *Halloran v. Dickerson*, 679 N.E.2d 774, 782 (Ill. App. Ct. 5th Dist. 1997)). No enforceable contract exists without "a meeting of the minds or mutual assent as to the terms of the

contract." *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991). Plaintiffs allege none of these elements. "The mere allegation that a contract exists, without well pleaded facts supporting the same, is a legal conclusion which is not admitted true by a motion to . . . dismiss." *Heritage Commons Partners v. Summit,* No. 85 C 10713, 1987 WL 6598, at *6 (N.D. Ill. Feb. 12, 1987); s*ee Talbert v. Home Savings Bank of America, F.A.*, 638 N.E.2d 354, 357 (Ill. App. Ct. 1st Dist. 1994).

Plaintiffs' breach of contract claims first fails because the Prospectus attached as Exhibit A to the Complaint—the purported contract between the parties, *see* Dkt. 1-1 (Compl. ¶¶ 8, 19, 32)—is dated January 31, 2021, five months *after* the allegedly faulty data was released. *See Swiss Bank Corp. v. Dresser Indus., Inc.*, 942 F. Supp. 398, 402 (N.D. Ill. 1996) (holding prospectus that was published three years after the contract was formed to be irrelevant).

Second, Plaintiffs assert that they "entered into a contractual relationship with [Invesco], with the terms governed by the Prospectus whereby Plaintiff would pay Defendant fees for managing the ETF and Defendant would provide Plaintiff with the daily ETF data." Dkt. 1-1 (Compl. ¶ 32). Both of these statements are demonstrably incorrect—Plaintiffs do not pay Invesco fees for managing the Trust, and Invesco did not undertake any obligation to provide Plaintiffs with any Trust "data." The Prospectus expressly states that the Trust "is not actively managed by traditional methods," and makes clear that Invesco is not paid a management fee. Dkt. 1-1 (Compl. ¶14) ("The ETF is not actively managed."); *see* Dkt. 1-1 (Compl., Ex. A, 3, 9). Further, Plaintiffs point to no provision in the Prospectus whereby Invesco assumes any obligation to provide "ETF data" to Plaintiffs, or any other arbitrage traders for that matter. Indeed, no such provision exists.

What is more, a prospectus is not a contract and thus cannot form the basis of a breach of contract claim. *See Edwards v. Sequoia Fund, Inc.*, No. 18 Civ. 4501 (GBD), 2018 WL 6039815,

at *5 (S.D.N.Y. Oct. 18, 2018), aff'd, 938 F.3d 8 (2d Cir. 2019) (holding that information in a prospectus cannot form the basis of a breach of contract claim) ("*Sequoia Fund*"); *see also Emerald Invs. LP v. Equitable Life Assurance Soc'y of U.S.*, No. 04 C 4285, 2005 WL 3470296, at *3 (N.D. Ill. Dec. 19, 2005) (holding that a prospectus was not part of the parties' contract where the contract did not "incorporate[] the prospectus or state[] that it defines the relationship between" the parties); *Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*, No. 653665/2011, 2012 WL 6929336, at *5 (N.Y. Sup. 2012) ("A prospectus, or a prospectus supplement, is indeed not a contract."). For that reason, in *Sequoia Fund*, the court held that no meeting of the minds occurred when a policy contained in a prospectus "was adopted by Defendant alone." 2018 WL 6039815, at *4. Further, the court explained, "prospectuses . . . are not contracts but are rather *mandatory regulatory disclosure documents*." *Id.* at *3 (citation omitted). The United States Court of Appeals for the Ninth Circuit has similarly held that a prospectus offering securities for sale is not an "offer" under contract law. *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003).

2.     <u>Plaintiffs Do Not Sufficiently Plead the Remaining Elements of a Breach of Contract Claim</u>

Even assuming the Prospectus is an enforceable contract, which it is not, Plaintiffs do not sufficiently plead that Plaintiffs performed under the contract, that Invesco breached any term of the contract, or that Plaintiffs suffered damages because of a breach by Invesco.

(a)     Performance

First, the Complaint alleges only that "Plaintiffs have fully performed under the contract." Dkt. 1-1 (Compl. ¶ 33). This is a textbook example of a mere conclusion of law that this Court must reject. *See Bissessur*, 581 F.3d at 602–03. The Complaint generally alleges that "Plaintiffs entered into a contractual relationship . . . whereby Plaintiff [sic] would pay Defendant fees for

managing the ETF . . . ." Dkt. 1-1 (Compl. ¶ 32). Plaintiffs, however, never allege how many shares in the Trust they purchased or when, or how much they paid in fees, if any. In fact, the Prospectus attached to the Complaint makes clear that Plaintiffs do not pay fees to Invesco. The Complaint's threadbare recitation of this element fails as a matter of law.

(b) Breach

Second, the Complaint alleges that Invesco breached a contractual obligation "by providing Plaintiffs with inaccurate, manipulated, and/or doctored data." *Id.* ¶ 35. But the Complaint fails to allege any contractual obligation on behalf of Invesco to provide Plaintiffs with any data whatsoever. And even assuming that such an obligation exists, which it does not, the Complaint also fails to sufficiently allege that Invesco breached it.

The Complaint alleges that "[o]n or around August 31, 2020, Defendant was required to rebalance the ETF to correspond to changes in the Index and to properly record that information in the daily data provided to investors, like Plaintiffs." *Id.* ¶ 34. Plaintiffs do not and cannot cite to any contractual provision in which Invesco undertook this obligation or agreed to provide this data to Plaintiffs. For this reason alone, the Complaint must be dismissed. *See Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13 C 1819, 2013 WL 6671796, at *2 (N.D. Ill. Dec. 18, 2013) ("Without identifying a provision of the Agreement that was actually breached, [plaintiff] cannot allege a claim for breach of contract.").

The Complaint alleges that "the Basket for the August 31, 2020 trade date" was transmitted after the market closed on August 28, 2020. *See* Dkt. 1-1 (Compl. ¶ 23). The Basket was an offer to create or redeem Creation Units provided to parties with Participant Agreements with the Trust (*i.e.*, not for Plaintiffs), and even then, Invesco, as Sponsor, specifically disclaimed liability for any inaccuracies with respect to the Basket. Dkt. 1-1 (Compl., Ex. A, 15–16, 48, 50); Berg Decl., Ex. A, § 4.03. That Plaintiffs unilaterally used this data to execute an unsuccessful arbitrage

10

trading strategy does not somehow create a contract with Invesco or create liability for Invesco, especially where Invesco has specifically disclaimed any liability as to the accuracy of Basket.

Without a specific contract provision to support their claim, Plaintiffs are left asserting the extreme and unprecedented theory that Invesco is in privity with any market participant who unilaterally uses the Basket for its own purposes to trade in securities outside of the Trust. This theory is not only legally baseless, but also would exponentially expand liability across the fund industry as a whole. Indeed, such a rule would increase the industry's exposure to any losses sustained by third-party market participants, including arbitrage traders speculating in the value of non-Trust securities, to a potentially infinite degree for any error, no matter how slight or brief.

(c)     Damages

Finally, the Complaint generically alleges that "Plaintiff [sic] engaged in trading based on the faulty data provided and sustained substantial financial losses in excess of $2,500,000.00." Dkt. 1-1 (Compl. ¶ 36). But alleging a generic loss is not enough to state a claim for a breach of contract. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007) (holding that a failure to demonstrate actual damages fails to state a breach of contract claim under Illinois law). Plaintiffs' injury must also be "a result" of defendants' breach. *Talbert*, 638 N.E.2d at 357. Plaintiffs vaguely allege that their unspecified trades—which occurred at an unspecified time— resulted in $2.5 million in financial losses. Yet Plaintiffs fail to allege with any particularity how their purported injury resulted from any act by Invesco. Indeed, Plaintiffs do not even allege whether they engaged in trading before or after Invesco distributed the corrected data.

Because Plaintiffs fail to adequately plead every element of a breach of contract claim, this claim must be dismissed.

### B.      Plaintiffs Fail to Plead Gross Negligence (Count II)

The elements for negligence under Illinois law are "duty, breach, proximate cause, and damages." *Fed. Deposit Ins. Corp. v. Giannoulias*, 918 F. Supp. 2d 768, 772 (N.D. Ill. 2013). Plaintiffs' gross negligence claim fails on each element. Gross negligence equates to "recklessness" or "the absence of the slightest degree of care"; honest mistakes and errors do not amount to gross negligence. *Samoylovich v. City of Chicago*, No. 1-17-2962, 2019 WL 1462194, at *8–9 (Ill. App. Ct. 1st Dist. May 29, 2019); *see also Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994). Here, Plaintiffs have not adequately alleged that (i) Invesco owed any duty to Plaintiffs, (ii) Invesco breached any duty to Plaintiffs, or (iii) Plaintiffs suffered damages directly or proximately caused by Invesco's conduct.

### 1.      Plaintiffs Fail to Allege a Duty on Behalf of Invesco

First, Plaintiffs have failed to allege that Invesco owed any duty of care to Plaintiffs. It is Plaintiffs' obligation to plead facts from which a court can infer the existence of a duty of care. *Gammons v. Crown Castle USA, Inc.*, No. 15-CV-02310, 2016 WL 1270453, at *4 (N.D. Ill. Mar. 31, 2016). Plaintiffs' allegation that the Prospectus gives rise to a duty on the part of Invesco to Plaintiffs is incorrect for the reasons outlined in Section A.1 above—the Prospectus is not a contract and thus established no duty or obligation on behalf of Invesco. Where no contract exists between two parties, there is no duty absent an extra-contractual one. *Bieruta v. Klein Creek Corp.*, 770 N.E.2d 1175, 1182 (Ill. App. Ct. 1st Dist. 2002) (holding no duty of care was owed to plaintiff where no contract existed between him and defendant). Further, where a negligence claim is predicated on the existence of a contract between the plaintiff and defendant, the defendant owes no duties beyond those described in the contract. *Holubek v. City of Chicago*, 497 N.E.2d 348, 350 (Ill. App. Ct. 1st Dist. 1986); *see Knowles v. TD Ameritrade Holding Corp.*, 427 F.Supp.3d 1070, 1080–81 (D. Neb. 2019). Even accepting that the Prospectus is a contract, which it is not,

Plaintiffs point to no provision from it suggesting Invesco has a duty "to its investors, including Plaintiffs, to provide correct and accurate data on a daily basis." *See* Dkt. 1-1 (Compl. ¶ 38). Plaintiffs fail to show that Invesco owes them, arbitrage traders in the secondary market, a duty of any kind, particularly in light of the Trust Agreement's disclaimer that Invesco has no liability regarding the accuracy of the Basket. Berg Decl., Ex. A, § 4.03.

To encourage this Court to invent an unprecedented duty between a fund sponsor and secondary arbitrage trader, the Complaint contains a single conclusory statement that Invesco "owes a duty of care to its investors, including Plaintiffs, to provide correct and accurate data on a daily basis to its investors, including Plaintiffs." Dkt. 1-1 (Compl. ¶ 38). But this assertion contradicts the language of the Trust Agreement, in which Invesco disclaims liability for the accuracy of the Basket, as well as the Prospectus, which makes clear that the sole purpose of the data is to allow parties with Participant Agreements (not Plaintiffs) to create and redeem Creation Units. Such bald assertions, without facts to support them, are insufficient to create a duty between Invesco and Plaintiffs. *See Gammons*, 2016 WL 1270453 at *4 (holding that plaintiff did not plead any facts from which the Court could infer the existence of a duty of care). Invesco has not found a single reported case in which a court found that an exchange-traded fund like the Trust had any duty of care to secondary market traders with no direct contractual connection to the fund itself.

But even if a duty of care could theoretically exist, despite the clear language of the Trust documents and Invesco's disclaimer (and it cannot), the question would be whether such a duty is supported by four public policy considerations: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 529 (Ill. 2004). Plaintiffs assert that Invesco somehow owes a duty to any third party

who uses the Basket for its own algorithmic trading purposes, even going so far as to allege liability for Plaintiffs' speculative trading outside of the Trust. If adopted, this extreme theory would significantly increase the exposure of investment managers to third-party liability to a potentially infinite degree. Such an effect runs contrary not only to the express language of the Trust documents, but also to public policy. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 511 (7th Cir. 2009) ("It would be an onerous burden for [a defendant] to guard against injuries which result from a person's voluntary encounter with a known risk."); *see also City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1126 (Ill. 2004) (declining to find that a gun manufacturer had a duty to the public to prevent the sale of firearms to those who might use the weapons to commit crimes because of the "immense" burden on the manufacturers and the potentially negative consequences of imposing it).

Finally, again accepting the existence of a contract between Plaintiffs and Invesco for argument's sake, under the economic loss doctrine, it is inappropriate for a plaintiff to recover economic losses that are more appropriately governed by contract law principles than tort. *Contact Lenses Unlimited, Inc. v. Johnson*, 531 N.E.2d 928, 930 (Ill. App. Ct. 1st Dist. 1988) (dismissing gross negligence claim brought by a plaintiff suing to recover the cost of defendants' faulty home repairs because plaintiffs were "essentially . . . complaining that they did not receive the benefit of their bargain—a harm which is appropriately remedied by bringing an action for breach of contract."). Plaintiffs cannot simply characterize that alleged breach of contract as "willful and wanton," transform it into a separate tort, and claim damages that are entirely foreclosed under basic contract principles. *Id*. at 930–31.

### 2.  Plaintiffs Fail to Allege Any Breach

In addition to failing to establish a duty by Invesco, Plaintiffs have similarly failed to demonstrate any breach by Invesco. The Complaint alleges that Invesco breached its purported

14

duty of care "by providing inaccurate, manipulated and/or doctored daily data for the rebalanced index composition." Dkt. 1-1 (Compl. ¶ 39). Gross negligence requires Plaintiffs to show that Invesco acted with "an element of recklessness" and a "blatant disregard" for Plaintiffs. *Samoylovich*, 2019 WL 1462194, at *8. As stated above, Invesco disclaims liability for the accuracy of the Basket. Berg Decl., Ex. A, § 4.03. Invesco cannot have acted with gross negligence toward Plaintiffs by publishing a Basket, which was an offer to select participants, not Plaintiffs, to create or redeem "Creation Units," especially in light of the specific disclaimer that Invesco is not liable for the Basket's accuracy in connection with that offer. And this is particularly true here, where Plaintiffs do not allege a thing Invesco stood to gain from publishing an inaccurate Basket. Any inaccuracies would be honest mistakes or errors not cognizable in gross negligence.

3.     Plaintiffs Fail to Allege that Invesco Proximately Caused Damages

The Complaint is deficient of allegations that Invesco proximately caused any damages to Plaintiffs. The Complaint alleges that "[o]n August 31, 2020, Defendant breached its duty of care by providing inaccurate, manipulated and/or doctored daily data" and that as a direct and proximate result, "Plaintiffs suffered substantial trading losses in excess of $2,500,000.00." Dkt. 1-1 (Compl. ¶¶ 39-41). But it fails to describe what trading occurred and when, or how Plaintiffs allegedly relied on the data. When alleging such a loss, Plaintiffs must plead some specificity as to why the losses, or any bridge between the supposed breach and the alleged harm, occurred. *Sadler v. Retail Prop. of Am., Inc.*, No. 12 C 5882, 2014 WL 2598804, *18 (N.D. Ill. 2014) ("[E]ven if [Defendant] acted negligently by failing to conduct a due diligence check . . . which negligently or intentionally led to Ameriprise disseminating materially misleading and inaccurate information, the Plaintiffs must still link that breach to some particular harm to them."); *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 684 (7th Cir. 1990) (plaintiffs alleging that defendants' misrepresentations caused an investment that was subsequently wiped out had not adequately pleaded proximate cause

15

because "they suggest no reason *why* the investment was wiped out" or what "the cause of the transaction's turning out to be a losing one" was). With no description of the trading Plaintiffs engaged in, the Complaint fails to plead that any losses are attributable to Invesco rather than to Plaintiffs' own mistakes, particularly in light of the Basket's purpose and Invesco's disclaimer.

### C. Plaintiffs Fail to Plead Negligent Misrepresentation (Count III)

Plaintiffs' negligent misrepresentation claim fails because Plaintiffs have not satisfied Rule 9(b), or alleged any facts from which it can be ascertained that Invesco made a "false statement of material fact," that Invesco owed Plaintiffs any duty to communicate this type of information, or that Plaintiffs reasonably relied upon the data.

The elements for negligent misrepresentation include "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information." *Fox Assocs. v. Robert Half Int'l*, 777 N.E.2d 603, 606 (Ill. App. Ct. 1st Dist. 2002); *see In Retail Fund Algonquin Commons, L.L.C. v. Abercrombie & Fitch Stores, Inc.*, No. 09 C 5824, 2010 WL 1874054, at *7 (N.D. Ill. May 10, 2010). Further, "liability for negligent misrepresentation is limited to situations where the defendant is in the business of supplying information for the guidance of others in their business transactions." *Browning v. Eckland Consultants, Inc.*, No. 1-03-3607, 2004 WL 2687961, at *5 (Ill. App. Ct. 1st Dist. Aug. 13, 2004).

1. <u>The Heightened Pleading Standard of Rule 9(b) Applies to Plaintiffs' Averments of Fraud</u>

Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions

16

of a person's mind may be alleged generally." It is well-settled law that "Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on the underlying facts alleged in the complaint." *Sequel Capital, LLC v. Pearson*, No. 07-CV-2642, 2010 WL 4008161, *7 (N.D. Ill. Oct. 13, 2010) (citing *Borsellino*, 477 F.3d at 507). An allegation that a defendant has "doctored" information constitutes an averment of fraud. *See Plestsov v. GTS Transportation Corp.*, No. 20-CV-1847, 2021 WL 534666, *3 (N.D. Ill. Feb. 12, 2021) (acknowledging that allegations of "'doctored' logbooks" were "acts of deception" amounting to an averment of fraud, even if the claims were not ultimately premised on that fraudulent course of conduct.)

Plaintiffs contend that Defendant "wrongfully manipulated, engineered and/or doctored" the Trust's composition data "as to appear properly balanced." Dkt. 1-1 (Compl. ¶¶ 28, 43). This allegation suggests that Invesco purposely altered the data it shared with investors in order to induce their reliance on it—a clear averment of fraud requiring a heightened pleading standard under Rule 9(b).

2.      Plaintiffs Fail to Plead a False Statement of Material Fact

Most fundamentally, Plaintiffs fail to establish any false statement of material fact by Invesco. The Complaint merely alleges that Invesco "made multiple false statements of material facts by providing the inaccurate, manipulated and/or doctored data daily index composition to Plaintiffs." Dkt. 1-1 (Compl. ¶ 43). But because the Complaint never describes what information Invesco provided and how it was "inaccurate, manipulated and/or doctored," the Complaint fails to adequately allege with any particularity that any statement by Invesco was false or material, or that Invesco stood to gain anything from this alleged conduct, falling well short of Rule 9(b)'s particularity standard, which requires plaintiffs to plead "the who, what, when, where, and how of the specific misconduct." *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 860 (N.D. Ill. 2006) ("When a plaintiff complains of a false or misleading statement, he or she must identify

17

the statement and set forth why it is false."); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) (plaintiffs failed to plead scienter under Rule 9(b) because they did not allege defendant had "anything to gain from any fraud[.]").

The Basket published each day is intended for the benefit of the Participating Parties and DTC Participants with whom the Trust has Participant Agreements, so that those parties may place orders for or redeem the Trust's Creation Units—not for the benefit of Plaintiffs, who are not Participating Parties or DTC Participants.  Dkt. 1-1 (Compl., Ex. A, 15-16, 48, 50).  In fact, nowhere in the 99-page Prospectus that Plaintiffs attach to their Complaint or elsewhere does Invesco state or imply that the Basket is for third-party arbitrage traders to engage in speculative trading outside of the Trust.  Making an offer for the creation or redemption of Creation Units to certain select participants cannot legally constitute a false statement of existing material fact to unrelated third parties, including Plaintiffs.  *Browning*, 2004 WL 2687961, at *6.  That is particularly true here, where Invesco disclaimed any liability for the accuracy of the very data Plaintiffs usurped for their own purposes.

### 3.  Plaintiffs Fail to Allege a Duty Owed by Invesco

The Complaint contains a single conclusory, wholly insufficient statement that Invesco "owed Plaintiffs a duty of care to communicate the correct daily data composition."  Dkt. 1-1 (Compl. ¶ 45).  This conclusory assertion is insufficient.  *See Gammons*, 2016 WL 1270453 at *4 (holding that plaintiff did not plead any facts from which the Court could infer the existence of a duty of care).  Plaintiffs must allege that Invesco owed *them*, specifically, a duty to communicate accurate information, which Plaintiffs have failed to do here.  *Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 452 (Ill. 1989); *see Browning*, 2004 WL 2687961 at *6.  Further, where a negligence claim is predicated on the existence of a contract between the plaintiff and defendant, the defendant owes no duty beyond those described in the contract.  *Holubek*, 497

N.E.2d at 350. For the reasons outlined above in Section B.1 and C.1, Invesco has no contract with Plaintiffs, and thus no duty to them, and Plaintiffs fail to allege that Invesco provided the Basket for the purpose of guiding *them* in their business dealings, a fundamental requirement of a negligent representation claim. *Browning*, 2004 WL 2687961 at *6 (finding that plaintiff who purchased property based on the findings of defendant's environmental assessment, when defendant had only contracted with seller for the assessment, failed to state a claim for negligent misrepresentation). Indeed, the allegedly manipulated or doctored Basket was an offer to sell or redeem Creation Units provided only to select participants—not to Plaintiffs. In any event, Invesco explicitly disclaimed liability in the Trust Agreement for any inaccuracies. Put plainly, Invesco cannot owe a duty to arbitrage traders who misunderstood and misused the Basket to further their own speculative trading strategy, unbeknownst to Invesco and despite an explicit disclaimer to the contrary.

4.     <u>Plaintiffs Fail to Allege that Invesco Intended to Induce Them to Act</u>

Plaintiffs' conclusory allegation that "Defendant intended Plaintiffs (and other investors) to act on its faulty data" is a mere recitation of an element of the cause of action. *See Bissessur*, 581 F.3d at 602–03. As discussed, the daily Basket is disseminated with the intent of making an offer to select parties with Participant Agreements to place orders for, or redeem, Creation Units, not to induce arbitrage traders to trade in publicly held securities outside of the Trust for their own gain. Dkt. 1-1 (Compl., Ex. A, 15-16, 48, 50).

5.     <u>Plaintiffs Fail to Allege They Reasonably Relied on Data</u>

Plaintiffs' claim also fails because they fail to allege facts showing that they reasonably relied on the Basket. The Complaint alleges only that "Plaintiffs made trades algorithmically relying on that data file to conduct arbitrage." Dkt. 1-1 (Compl. ¶ 26). "[A] court can determine reasonable reliance as a matter of law when no trier of fact could find that it was reasonable to rely

19

on the alleged statements or when only one conclusion can be drawn." *H&S Bldg. Inv., LLC v. Irani*, No. 1-17-0614, 2017 WL 6762434, at *3 (Ill. App. Ct. 1st Dist. Dec. 29, 2017) (citation omitted). "If the party's reliance is unreasonable in light of the information open to him, the loss is considered his own responsibility." *D.S.A. Fin. Corp. v. County of Cook*, 801 N.E.2d 1075, 561 (Ill. App. Ct. 1st Dist. 2003). Further, when information is not directed to plaintiffs and contains no explicit guarantee of accuracy, plaintiffs cannot allege reasonable reliance on that information. *Grass v. Homann*, 474 N.E.2d 711, 714 (Ill. App. Ct. 4th Dist. 1984) (overturned on other grounds) (holding plaintiff could not state a claim for negligent misrepresentation based on a certificate delivered to someone other than plaintiff with no guarantee of accuracy).

Here, Plaintiffs' reliance was patently and uncontrovertibly unreasonable. Plaintiffs misused the data file for their own purposes when that information was intended for only authorized participants to create or redeem "Creation Units." And, of course, Invesco expressly disclaimed the accuracy of the data in the Basket. Berg Decl., Ex. A, §§ 2.04(g), 4.03. Plaintiffs' cannot plausibly argue that their reliance was reasonable under these circumstances.

6.     <u>Plaintiffs Fail to Allege Damages Caused by Reliance</u>

Plaintiffs have not alleged how the information they relied on caused any purported damages other than to say they "made trades algorithmically relying on that data file to conduct arbitrage." Dkt. 1-1 (Compl. ¶ 26). Such vague descriptions fail to adequately plead that Plaintiffs' reliance on the Basket caused their losses. *Sadler*, 2014 WL 2598804, at *18 (Plaintiff failed to plead proximate cause for both negligence and fraud claims where it failed to allege that it would not have bought certain stocks "but for" the information they received from Defendant).

**CONCLUSION**

For the reasons set forth above, Invesco respectfully requests the Court dismiss the Complaint under Rule 12(b)(6) with prejudice.

20

Dated: December 6, 2021        Respectfully submitted,


*/s/ Nicholas M. Berg*

Nicholas M. Berg
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Nicholas.Berg@ropesgray.com


*Attorney for Defendant Invesco Capital
Management, LLC*

## Certificate of Service

The undersigned attorney hereby certifies that on the 6th day of December, 2021, true and correct copies of **Defendant Invesco Capital Management, LLC's Memorandum in Support of Defendant Invesco Capital Management LLC's Motion to Dismiss Case No. 1:21-cv-06343 Under Federal Rule of Civil Procedure 12(b)(6)** were sent via FedEx to all parties listed below, and additionally via email to J. Samuel Tenenbaum and James L. Koutoulas, attorneys for Plaintiffs:

J. Samuel Tenenbaum
Tenenbaum Law, LLC
10 N. Dearborn, Suite 400
Chicago, IL 60602

James L. Koutoulas
Koutoulas Law, LLC
10 N. Dearborn, Suite 400
Chicago, IL 60602

*Attorneys for Plaintiffs Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc.*

Dated: December 6, 2021                    ROPES & GRAY LLP


                                           /s/ Nicholas M. Berg
                                           _____

                                           Nicholas M. Berg
                                           **ROPES & GRAY LLP**
                                           191 North Wacker Drive
                                           31st Floor
                                           Chicago, Illinois 60606
                                           Tel: (312) 845-1200
                                           Fax: (312) 845-5522
                                           Nicholas.Berg@ropesgray.com


                                           *Attorney for Defendant Invesco Capital Management, LLC*