# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, LTD., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc., | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-06343 |
| Invesco Capital Management, LLC, | Honorable Matthew F. Kennelly |
| Defendant. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiffs, Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc. ("Plaintiffs"), by and through their undersigned counsel, and for their Response in Opposition to Defendant's Motion to Dismiss, respectfully state as follows:

## INTRODUCTION & RESPONSE TO DEFENDANT'S PRELIMINARY STATEMENT

While an interesting exposition by Defendant of how ETFs function and the role of arbitrageurs, it is not based in reality, let alone on the facts alleged in the Amended Complaint [hereinafter, "Complaint"]. Defendant introduces their Motion to Dismiss [hereinafter "Motion"] with the unsupported allegation that "Plaintiffs engage in the speculative and risk-filled business of arbitrage trading in public securities . . . To identify variations, arbitrage traders rely on any and all information available to them, which they hope will allow them to exploit pricing inefficiencies before the market can react." Mot. at p. 1. Defendant spends the next three pages trying to frame their legal arguments with their clouded perception of the ETF industry. None of this information is alleged in the Complaint, nor is it accurate; it merely serves to add additional material facts that are in dispute and show that the Complaint should be heard at trial. Rather, an ETF sponsor delegates entirely the act of increasing (by way of creation) or decreasing (by way of redemption) gross notional exposure the fund. An ETF sponsor is a passive manager of a trust which simply accepts creation or redemption orders *from* arbitrageurs by way of their prime brokers, which must be an Authorized Participant. The ETF sponsor (like Defendant) does not buy or sell any trust assets or ETF shares—this is all done by the arbitrageurs. Indeed, ETFs would not exist without arbitrageurs.

It seems Defendant is attempting to overcomplicate a straightforward Complaint: Plaintiffs purchased the ETF, reasonably relied on the daily data file provided by Defendant, Defendant has

1

and continues to provide that daily file information to Plaintiffs, Plaintiffs use that data file to engage in trading, and Plaintiffs have netted a profit nearly every trading day, with the notable exception of August 31, 2020. On August 31, 2020, Defendant sent a data file with bad information and Plaintiffs traded on that bad information and sustained millions of dollars in losses. That is, the one-day Defendant sent an inaccurate file is the one-day Defendant sustained millions of dollars in losses.[1]

Despite its attempts to disclaim responsibility (somehow simultaneously in both contract and tort) or characterize Plaintiffs as brazen speculators improperly using the data file in risky trading, Defendant is responsible for the information it provides as part of its ETF. The bottom line is if Defendant provided inaccurate information that investors (like Plaintiffs) could not reasonably rely upon then Defendant would be out of business. Defendant would also be out of business without arbitrageurs like Plaintiffs as they are extremely important to ensuring the ETF closely mimics its underlying individual components. The Court should ignore Defendant's unsupported factual allegations and look to the Complaint when ruling on this Motion. Plaintiffs have sufficiently alleged claims for breach of contract or, in the alternative, gross negligence and negligent misrepresentation. Accordingly, Defendant's Motion must be denied.

## BACKGROUND

Defendant operates an exchange traded fund ("ETF") that is primarily designed to passively track an index of stocks. Compl. ¶ 1. Plaintiffs engage in arbitrage trading of this ETF and rely on daily data provided by Defendant in executing their trading strategy. *Id.* The ETF tracks stock composition of the Nasdaq 100 Index® (the "Index"). *Id.* at ¶ 15. The ETF is not

---

[1] While it should not be required at this stage, Plaintiffs are happy to amend their Complaint to attach detailed documentation of August 31, 2020, 9:28 a.m. trading based on Defendant's data file (approximately 50,000) transactions and details down to the dollar and cent the losses.

actively managed, but Defendant charges investors approximately $300 million in annual fees and expenses for its services managing the ETF. *Id.* at ¶ 16. The data file transmits several types of data, including the quantity of shares that the ETF owns for each individual Index constituent company per 50,000 shares of each "Unit" of the ETF (in the aggregate, the "Basket") and is transmitted to investors in the ETF ahead of each business day. *Id.* From time to time, Defendant must adjust the weight and composition of the ETF's individual securities to track changes in the Index. *Id.* at ¶ 17. Defendant makes these adjustments either by increasing or decreasing the relative share counts of member securities in the Basket, or removing members from or adding members to the Basket due to corporate events, such as stock splits, or because constituent companies are added or removed from the Index. *Id.*

Plaintiffs have been using this daily information for at least the last five years, and, accepted the terms of the ETF's prospectus when they transacted in the ETF. *Id.* at ¶¶ 18-19. On August 31, 2020, there were two stock splits which impacted the Index that required changes by Defendant to the share quantities in the Basket. *Id.* at ¶ 20. Plaintiffs (and other clients) rely upon Defendant to properly reflect the share quantities of the Index's constituent member companies in the Basket, and properly record and provide accurate data reflecting the ETF's composition on a daily basis. *Id.* at ¶ 21. On business days, Defendant transmits the file once daily for the subsequent trading day. *Id.* at ¶ 22. On August 28, 2020, Defendant transmitted a data file that defined the Basket for the August 31, 2020 trade date with inaccurate data stating 42,039 shares of Apple and 3,584 of Tesla were in the Basket. *Id.* at ¶ 23-24. The data file also reduced the other 101 member stocks by a factor of 1.55 to perfectly offset the inaccurately inflated quantities of Apple and Tesla so that the data file error could not be easily detected. *Id.* at ¶ 25. Plaintiffs made trades algorithmically relying on the data file to conduct arbitrage trading. *Id.* at ¶ 26. On or around 11:00

a.m. on August 31, 2020, Defendant issued another, corrected data file with the Basket data now accurately reflecting the splits—16325 shares of Apple and 1,113 shares of Tesla—and the corrected quantities of the other 101 components of the Basket. *Id.* at ¶ 27. Defendant failed to properly update the Basket ahead of the August 31, 2020 trade date, and the data file may have been manipulated, engineered, and/or doctored to appear properly balanced. *Id.* at ¶ 28. As a direct result of Defendant's failure to properly update the Basket, Plaintiffs suffered substantial monetary losses of more than $2,500,000. *Id.* at ¶ 29. This is not the first time Defendant has made such trade errors. *Id.* at ¶ 30; *see also* City Wire, *Invesco to pay investors $105m over index fund rebalancing error* (last visited Mar. 14, 2022) [hereinafter "City Wire"].[2]

## LEGAL ARGUMENT

**I.    Standard of Review.**

Rule 8 requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). That is, federal court requires notice pleading, not fact pleading. *See id.* In ruling on a 12(b)(6) motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded allegations and draws all reasonable inferences in Plaintiffs' favor. *ABN AMRO, Inc. v. Capital Intern. Ltd.*, 595 F. Supp. 2d 805, 852 (N.D. Ill. 2008). "Plaintiffs' non-fraud claims will survive a motion to dismiss for failure to state a claim so long as the Complaint sets forth enough facts to state a claim for relief that is plausible on its face." *Id.* (internal citations and quotations omitted); *see also Adams v. City of Indianapolis* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[2] *Available at* https://citywireusa.com/professional-buyer/news/invesco-to-pay-investors-105m-over-index-fund-rebalancing-error/a1354325

4

## II. Plaintiffs Have Sufficiently Pleaded a Claim for Breach of Contract.

To state of a cause of action for breach of contract, Plaintiffs must plead: (1) existence of a contract; (2) performance by Plaintiffs; (3) breach by Defendant; and (4) damages proximately caused by Defendant's breach. *See, e.g., Horowitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 942 (Ill. App. Ct. 2010). Defendant forwards two arguments for dismissal: (1) Plaintiffs have not properly alleged the existence of a contract; and (2) even if a contract exists, Plaintiffs have not properly alleged the remaining elements. A prospectus, however, is (and has been upheld as) a binding contract. Thus, Plaintiffs have sufficiently alleged the existence of a contract. Plaintiffs have also pleaded the remaining elements to establish a claim for breach of contract. Accordingly, Defendant's Motion must be denied.

### A. The Prospectus is a contract.

Defendant boldly contends, "Courts across the country have *consistently held* that a prospectus is not a contract supported by a meeting of the minds[.]" Mot. at p. 2. Yet, Defendant only cites to a handful of cases and outright ignores contrary authority, even in its own citations. In fact, Defendant's paramount case, *Edwards v. Sequoia Fund, Inc.*, was not even affirmed on the grounds cited by Defendant—which explains why Defendant's Motion omits any discussion of the Second Circuit's actual Opinion. *See* Mot. at p. 8-9 (citing *Edwards v. Sequoia Fund, Inc.*, No. 18 Civ. 4501 (GBD), 2018 WL 6039815, at *5 (S.D.N.Y. Oct. 18, 2018), aff'd 938 F.3d 8 (2d Cir. 2019)). In *Edwards*, shareholders filed a class action alleging the fund manager breached the concentration policy in the Statement of Additional Information. *Id.* at *1-2. The Southern District of New York dismissed holding the plaintiffs failed to allege a contract based on the concentration policy because there was no offer, intent to be bound, or meeting of the minds, and, in the alternative, assuming there was a contract, plaintiffs failed to allege a breach because the

5

investment policy allowed for concentration by passive increase. *Id.* at *4-6; *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 11 (2d. Cir. 2019) (summarizing district court's holding on motion to dismiss). On appeal, the Second Circuit "*assume[ed], without deciding*, that Plaintiffs **plausibly alleged the existence of a contract** that included the Concentration Policy *as an enforceable term* that could not be changed without a shareholder vote. We *reach only the district court's alternative holding*, and conclude that, even assuming the existence of a binding contract, Plaintiffs failed to plausibly allege a breach." *Edwards*, 938 F.3d 8 at 12 (emphasis added). Thus, the Second Circuit did not reach the issue of whether a prospectus constituted a contract; rather, it *assumed* Plaintiffs properly alleged the existence of a contract. *See id.* The finding that the *Edwards* plaintiffs failed to allege a breach is factually specific to that case and the investment policy allowing for passive increases in concentration, which is clearly distinguishable from Plaintiffs' breach of contract claim. *See id.*

More importantly, Defendant ignores the Ninth Circuit's holding in *Northstar Financial Advisors, Inc. v. Schwab*. In *Northstar*, the Ninth Circuit ruled that terms in a prospectus or statement of additional information *can form the basis for a contractual obligation*. *Northstar Financial, Inc. v. Schwab Investments*, 779 F.3d 1036, 1050-51, 1055 (9th Cir. 2015). The finding that the *Edwards* plaintiffs failed to allege a breach is factually specific to that case and the investment policy allowing for passive increases in concentration, which is clearly distinguishable from Plaintiffs' breach of contract claim. *See id.* The newer holding in *Northstar* and *Edwards* calls into question the holdings of other cases cited by Defendant. *See* Mot. at p. 9 (citing *McKesson HBOC, Inc. v. NY Store Common Ret. Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003). The *Northstar* court specifically distinguished *McKesson*. *See Northstar*, 779 F.3d 1036 at 1053. The Ninth Circuit also rejected the idea that a prospectus is not a contract and merely a "mandatory

disclosure document[.]" *Id.* at 1054. Accordingly, this Court, when ruling on this Motion, should assume the prospectus is a valid contract between the parties and deny the Motion.[3]

**B. Plaintiffs have sufficiently alleged all elements for breach of contract.**

Defendants take issue with the remaining elements of Plaintiffs' claim for breach of contract. First, Plaintiffs have sufficiently alleged performance on their part for purposes of surviving this Motion. "Plaintiffs agreed to the terms of the ETF's Prospectus when they purchased the ETF." Compl. ¶ 19. Plaintiffs have fully performed under the contract by paying their fees in exchange for the data file. *See id.* at ¶¶ 8, 19, 33. It is unclear what else Plaintiffs could plead or that Defendant wants Plaintiffs to provide that would further prove their performance thereunder.

Second, Defendant contends Plaintiffs have failed to identify a breach. Defendant seemingly denies that it is obligated to provide accurate information via the data file for the Basket. *See* Mot. at p. 10-11. This is curious given Defendant's swift decision to correct the error by issuing a new data file by 11:00 a.m. Eastern on August 31, 2020. *See* Compl. ¶ 27. Indeed, Defendant previously disclosed a prior rebalancing error and agreed to pay those damaged in the amount of $105 million. *See id.* The indelible truth is that no one would pay for the information being provided by Defendant if it was not accurate and Defendant would be out of business. In any event, Plaintiffs agreed to the Prospectus when they purchased the ETF and to receive an accurate daily data file. Defendant accepted payment from Plaintiffs and transmitted the data file on a daily basis. Until August 31, 2020, that data file had been accurate (as promised by Defendant). On August 31, 2020, the data file was inaccurate. Defendant is responsible for the accuracy of the data file and, by providing the inaccurate data file, it breached the contract.

---

[3] Defendant takes issue with the version of the Prospectus attached to the Complaint. The Prospectus is a living document that, as it is updated, the newer version is filed with the SEC. Defendant does not advise of any material differences between the relevant versions of the Prospectus that would alter the outcome here. Plaintiffs, however, are happy to amend the Complaint to provide a copy of the Prospectus in effect at the time of the incident.

Finally, Defendant alleges Plaintiffs have only vaguely alleged damages in the amount of $2,500,000, and does not detail how those damages resulted from Defendant's actions. *See* Mot. at p. 11. To the contrary, Plaintiffs clearly allege they used the bad data file to engage in trading and, as a direct result of the bad data, they sustained losses of $2,500,000. *See* Compl. ¶¶1, 29, 48. . This is certainly sufficient for purposes of this Motion. Defendant's reliance on *TAS Distributing Co.*, is misplaced. There, the noted insufficient damages was found on a motion for summary judgment, not at the pleading stage. *See TAS Distributing Co., Inc. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007). As detailed above, Plaintiffs are happy to amend the Complaint to provide detailed records of the trading that occurred using the bad data file and how it resulted in the damages alleged. In any event, Plaintiffs have sufficiently alleged a breach of contract and the Motion must be denied.

### III.     Plaintiffs Have Sufficiently Pleaded a Claim for Gross Negligence.

To state a cause of action for gross negligence, Plaintiffs must plead a duty, breach by Defendant, and damages proximately caused by Defendant. *FDIC v. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778, 785 (N.D. Ill. 2011). Defendant primarily takes issue with the existence of a duty between Plaintiffs and Defendant.

First, Defendant as the manager of the ETF and provider of the information had a duty to provide accurate information. *FDIC v. Borowski*, No. 2016 WL 7188166, at *5-6 (N.D. Ill. Dec. 12, 2016) ("Defendants are missing the forest for the trees. It is not these three duties that are dispositive, but rather the FDIC must allege and sufficiently plead that Defendant had a duty of reasonable care which they subsequently breached"). The Plaintiffs need show recklessness to sustain a cause of action for negligence. Indeed, Plaintiffs need not even prove lack of good faith or intent to injure under Illinois law. *See id.* Thus, Plaintiffs alleging Defendant provided a

8

deficient, inaccurate data file is sufficient. *See id.* (holding plaintiff properly alleged claims for gross negligence, negligence, and breach of fiduciary duty).

  Second, Defendant does not really argue it breached that duty of care; rather, it argues it not liable under the disclaimer of the Trust Agreement or for public policy considerations. These are both affirmative defenses that should be raised in an answer to the Complaint and developed through discovery. Moreover, Defendant's public policy argument asks the Court to consider the foreseeability of injury, likelihood of injury, the magnitude of the burden in guarding against the injury, and the consequences of placing that burden on Defendant. It is clearly foreseeable that inaccurate data in the data file transmitted to clients (whether they are "authorized" or not under Defendant's theory) is very likely to cause damages. The inaccurate data is relied upon in trading, as intended. While Defendant acts like this imposition would make its liability "infinite," Defendant's previous rebalancing error which resulted in $105 million in monetary damages would not have a "material impact on the firm's financial strength or financial condition." *See* City Wire (quoting Defendant's spokesperson). What's more, Defendant's position ignores the actual function of ETFs and the relationship between Defendant and arbitrage traders. Defendant being liable to the traders it intends to reach via the data file does not put it at infinite risk of liability to any trader. If Defendant puts out accurate information, like it promises, it will not be risk at infinite damages.

  Third, at this stage, Plaintiffs can plead claims in the alternative. The Federal Rules of Civil Procedure authorize Plaintiffs to plead claims in the alternative. If, as Defendant vehemently argues, no contractual obligation exists between the parties that does not foreclose upon Plaintiffs' duty of care in tort. "[A]t the pleading stage, Plaintiff is not required to choose one avenue for recovery over the other." *See Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718,

9

725 (N.D. Ill. 2021); *see also* Fed. R. Civ. Pro. 8(e). Thus, if Defendant is contractually liable then it may not be liable in tort. This need not be determined at this stage.

## IV. Plaintiffs Have Sufficiently Pleaded a Claim for Negligent Misrepresentation.

To state a cause of action for negligent misrepresentation, Plaintiffs must plead: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) intention to induce; (4) reasonable reliance by the other party on the truth of the statement; (5) damage resulting from reliance; and (6) duty on the party making the statement to communicate accurate information. *ABN AMRO, Inc. v. Capital Intern. Ltd.*, 595 F. Supp. 2d 805, 852 (N.D. Ill. 2008). Plaintiff has sufficiently pleaded these elements.

### A. An exception to the Moorman Doctrine applies.

Throughout their brief and more specifically in arguing against Plaintiffs' claim for negligent misrepresentation, the Defendant invokes the Moorman Doctrine, a.k.a. the Economic Loss Doctrine. *See* Mot. at p. 16 (citing *Browning v. Ecland Consultants, Inc.*, No. 1-03-3607, 2004 WL 2687961 (Ill. App. Ct. Aug. 13, 2004). *Browning* is hardly dispositive. "In general, the Illinois Supreme Court has imposed a duty on a party to avoid negligently conveying false information if the party is in the business of supplying information for the guidance of others in their business transactions." *ABN AMRO, Inc.*, 595 F. Supp. 2d 805 at 852. Like the *ABN AMRO* defendant, Defendant here seems to be arguing it is not in the business of supplying information or that the information was not supplied for the purpose in which plaintiff used it. *See id.* There, like here, the Court determined the defendant was in the business of supplying information (or, at best, was a hybrid business supplying both information and non-informational goods and services). *See id.* Here, contrary to Defendant's assertions, Defendant is in the business of supplying information via the data file from its ETF.

10

**B. The Disclaimer is not valid.**

Throughout its brief, Defendant disclaims liability (in contract and tort) based on the disclaimer in the Prospectus. Defendant cannot use the prospectus as a sword and a shield. To try to get the causes of action dismissed, it wants the Court to find no contract exists. But, to absolve itself of any liability, it wants the Court to enforce the disclaimer in that very same "contract." Thus, if the Court determines there is no valid contract between the parties then the disclaimer cannot be valid, either. Notwithstanding the foregoing, the disclaimer cannot be enforced against Plaintiffs under the public policy exception and superior position Defendant has in negotiating.

As a matter of policy, limitations of liability are disfavored in Illinois and are strictly construed against the drafter. *See, e.g., Westlake Financial Group, Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1174 (Ill. App. Ct. 2015). A limitation of liability will not be enforced if it violates public policy or something in the social relationship makes upholding the clause unconscionable. *BP Amoco Chemical Co. v. Flint Hills Resources, LLC*, No. 05 C 5661, 21009 WL 1033373, at *4 (N.D. Ill. Apr. 17, 2009). Here, it would be against public policy and unconscionable to enforce the provision against Plaintiffs. *See id.* Defendant drafted the prospectus and, if an arbitrageur wants to transact with the ETF, he or she has no choice but to accept the terms of the prospectus, including the limitation of liability. This means Defendant is in a superior position with respect to Plaintiffs (and any other party). In fact, Plaintiffs literally have no bargaining power with respect to the contract.

**C. The heightened pleading standard does not apply, but, even if it did, Plaintiffs have satisfied it.**

Defendant argues the Rule 9(b) heightened pleading standard must apply to Plaintiffs' claims because the allegations use words that sound in fraud. *See* Mot. at p. 16. However, the Seventh Circuit has held that negligent misrepresentation claims under Illinois law are measured

11

against the standard set forth in Rule 8. *See ABN AMRO*, 595 F. Supp. 805 at 853 (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 838 (7th Cir. 2007) ("The standard, unlike the Illinois standard, is designed simply to give defendants adequate notice of the allegation made against them.")). In any event, Plaintiffs' Complaint satisfies both burdens.

### D. Plaintiffs have sufficiently pleaded the remaining elements of Negligent Misrepresentation.

Defendant's first and second arguments to dismiss are predicated on the heightened pleading standard for negligent misrepresentation and fraud (which is not appropriate here). In essence, Defendant seems to argue that Plaintiffs have failed to identify the false or misleading statement, and that Plaintiffs have not alleged scienter because they have not alleged what Defendant would have gained from the misstatements. *See* Mot. at p. 17-18. With respect to the former, Defendant cherry picks a single paragraph in the Complaint to support its position that Defendant has failed to identify any false statement of material fact. *See id.* at p. 17 (citing Compl. ¶ 42). In paragraphs 23 through 25, however, Plaintiffs specifically detail the false statements included in the data file:

> On August 28, 2020 on or before 6 pm eastern time, Defendant transmitted a data file that defined the Basket for the August 31, 2020 trade date.
>
> That data file was *inaccurate*- stating that *42,039 shares of Apple and 3,584 of Tesla* were in the Basket.
>
> That data file was *further inaccurate* by *reducing the quantities of each and every one of the other 101 Basket member stocks by a factor of 1.55 to perfectly offset the inaccurately inflated share quantities of Apple and Tesla* so that the data file error could not be easily detected.

Compl. ¶¶ 23-25 (emphasis added). Plaintiffs even identify what the correct data should have been. *Id.* at 27. "Defendant issued another, corrected data file with the Basket data now accurately reflecting the splits- *16,325 shares of Apple and 1,113 shares of Tesla*- and corrected the quantities of the other 101 member components of the Basket." *Id. Muelbauer* provides no support for

Defendant's contention as it involved false statement sunder the California Consumer Legal Remedy Act, not Illinois law. *See Muelbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 860 (N.D. Ill. 2006). Thus, Plaintiffs have clearly identified false statements of material fact.

As for scienter, as identified in the cases Defendant cited, scienter is not just alleging what Defendant gained from the misstatement but can also be shown through gross indifference or reckless disregard. *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1255 (N.D. Ill. 1997).Here, Plaintiffs have clearly alleged that Defendant provided materially false information. It was not just false, it was structured in such a way that it was not easily detectable. *See* Compl. ¶ 25. At worst, this clearly evinces intent to manipulate and, at best, a complete reckless disregard for the accuracy of the information in the data file Defendant transmitted. From these allegations, the Court can draw a reasonable inference of scienter on the part of Defendants. *See id.* at 1255-56Many of Defendants other arguments within this section raise factual issues and affirmative defenses, which cannot be resolved on this Motion.

Third, Defendant contends Plaintiffs fail to allege a duty of care between themselves and Defendant. *See* Mot. at p. 18. Within this Section, Defendant argues (i) Plaintiffs make only a conclusory allegation, and (ii) a negligence claim cannot be predicated on a contract since the Defendant cannot owe a duty of care beyond the contract, but Defendant clarifies that no clarifies, "Invesco has no contract with Plaintiffs, and thus no duty to them[.]" *See id.* Defendant seems to believe that it has foreclosed upon any duty of care at all, contractual or otherwise. *See id.* Defendant is wrong. As detailed above, Plaintiffs can plead their claims in the alternative and need not pick one path forward at this stage. *See Solvay*, 521 F. Supp. 3d 718. Plaintiffs have alleged sufficient facts to establish the existence of a duty of care between themselves and Defendants.

Fourth, Defendant claims Plaintiffs' allegations regarding intent to induce is a "mere recitation." *See* Mot. at 18. Defendant argues the Basket is only an offer to select parties with Participant Agreements in place and does not apply to arbitrage traders. *See id.* Defendant's argument lacks merit—ultimately, Defendant cannot sincerely maintain that it provided this daily file without the expectation that it would cause reliance. That would be counterintuitive to its purpose.

Fifth, the reasonableness of reliance is a question of fact that should not be decided on a motion to dismiss. *See, e.g., Turubchuk v. S. Ill. Asphalt Co. Inc.*, 958 F.3d 541, 552 (7th Cit. 2020). Defendant argues Plaintiffs have failed to allege facts showing they reasonably relied upon the Basket, citing only paragraph 26 of the Amended Complaint. Defendant seemingly ignores the remaining allegations in the Amended Complaint in which Plaintiffs have sufficiently alleged reliance on the data in the Basket. *See.* Compl. ¶ 1 ("Plaintiffs used and relied upon in execution of their trades."); ¶ 18 ("Plaintiffs have been using this daily information for at least five years."); ¶ 21 ("Clients, such as Plaintiffs, rely on Defendant to properly reflect the share quantities of the Index's constituent member companies in the Basket, and to properly record and provide accurate data reflecting the ETF's composition on a daily basis."); ¶ 26 ("Plaintiffs made trades algorithmically relying on the data file to conduct arbitrage."); ¶ 47 ("Plaintiffs relied upon the truth of the faulty data provided by Defendant when they engaged in trading on August 31, 2020."). Indeed, Defendant knows clients (like Plaintiffs) relied upon this data file and they not have traded if they had known it was erroneous—which is why they issued a corrected file On August 31, 2020. *See id.* at ¶ 27; *see also Turubchuk*, 958 F.3d 541 at 552 ("Under Illinois law, whether reliance is justified is a question of fact that is to be viewed in light of the surrounding circumstances."). Defendant takes its argument one step further, urging the Court to rule as a matter

14

of law that Plaintiffs' reliance was patently unreasonable. *See* Mot. at 19-20. Plaintiff's citation to *H&S Building, Inc.* should be ignored because it is an unpublished case and "may not be cited as precedent by any party except in limited circumstances under Rule 23(e)(1)." Ill. Sup. Ct. R. 23(e)(1). Even if the Court wanted to consider this case (which it need not) it is readily distinguishable as it involved the purchase of property and the purchaser's failure to realize the property was two actually two separate, publicly recorded parcels. *See H&S Bldg Investments, LLC v. Irani*, No. 1-17-0614, 2017 WL 6762434, at *3 (Ill. App. Ct. Dec. 29, 2017). Moreover, *D.S.A. Finance Corp.* was decided on a motion for summary judgment, not a motion to dismiss, further underscoring that reliance is a fact question. *See D.S.A. Fin. Corp. v. Cty of Cook*, 801 N.E.2d 1075, 1079 (Ill. App. Ct. 2003). Here, Plaintiffs have pleaded sufficient allegations of justifiable reliance in light of the surrounding circumstances. *See Turubchuk*, 958 F.3d 541 at 552.

Finally, Defendant argues "Plaintiffs have not alleged how the information they relied on caused any purported damages other than to say 'made trades algorithmically relying on the data file to conduct arbitrage.'" *See* Mot. at p. 20. Defendant to cites *Sadler* to argue Plaintiffs "vague descriptions" that their reliance on the Basket caused their losses is insufficient. *See id. Sadler* provides no such support. In *Sadler*, the Court held those plaintiffs failed to allege reliance in their breach of fiduciary duty claim insofar as they would have acted differently "but for" the information received by Defendant. *Sadler v. Retail Props. of America, Inc.*, No. 12 C 5882, 2014 WL 2598804, at *18 (N.D. Ill. June 10, 2014). Proximate cause "is typically a question for the finder of fact to decided; only rarely are the facts so clear that the court can resolve the issue as a matter of law." *See Borowski*, 2016 WL 7188166, at *6. Here, Plaintiffs have alleged that their reliance on the accuracy of the data caused their damages. *See* Compl. ¶¶ 1, 29, 48; *Borowski*, 2016 WL 7188166, at *6 ("Here, Defendants would like the Court to determine *what* the proximate

15

cause of the FDIC's alleged losses was, not *whether the FDIC has sufficiently pled* proximate causation.") (emphasis in original).Indeed, Defendant knows clients (like Plaintiffs) relied upon this data file and would not have traded if they had known it was erroneous which is why they issued a corrected file On August 31, 2020. *See id.* at ¶ 27. Defendant also knows that trading on that faulty information would cause substantial losses, which is why it corrected the data—like it has in the past with other rebalancing errors. *See id.*; *see also* City Wire. Plaintiffs have sufficiently alleged their reliance caused damages. Accordingly, the Motion must be denied.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in whole, or, in the alternative, grant Plaintiffs leave to amend.

Dated: March 18, 2022

Respectfully submitted,
Plaintiffs

By: /s/ J. Samuel Tenenbaum
     One of their attorneys

J. Samuel Tenenbaum
Tenenbaum Law, LLC
10 N. Dearborn, Suite 400
Chicago, IL 60602
sam@tenenbaumlaw.com

James L. Koutoulas
Koutoulas Law, LLC
10 N. Dearborn, Suite 400
Chicago, IL 60602
james@koutoulaslaw.com

*Attorneys for Attorneys for Plaintiffs*
*Jeremy Salsburg, XDG Trading, LLC,*
*Eagle's View Partners, Ltd., Eagle's View*
*Management, LP, and First Horizon*
*Bank as Trustee for Jet Support Services, Inc.*

16

## CERTIFICATE OF SERVICE

    I, J. Samuel Tenenbaum, certify under penalties of perjury that I caused a copy of this Response in Opposition to Defendant's Motion to Dismiss to be filed electronically via the Court's CM/ECF System on this 18th day of March, 2022 and served via the Court's electronic filing system upon counsel of record:

s/ J. Samuel Tenenbaum