IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JEREMY SALSBURG; XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INVESCO CAPITAL MANAGEMEMENT, LLC. <br><br> Defendant. | Case No. 1:21-CV-06343 <br><br> Hon. Matthew F. Kennelly |

**DEFENDANT INVESCO CAPITAL MANAGEMENT, LLC'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Invesco Capital Management, LLC ("Invesco"), by and through its attorneys, respectfully submits this Reply Memorandum in Support of its Motion to Dismiss the Amended Complaint (the "Complaint") brought by Jeremy Salsburg, XDG Trading LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc. (collectively, "Plaintiffs"). The Complaint fails to sufficiently plead each of its causes of action for breach of contract, gross negligence, and negligent misrepresentation, warranting dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

Plaintiffs' Opposition to Defendant's Motion to Dismiss (the "Opposition"),[1] Dkt. No. 39, like the Complaint itself, is premised on an unprecedented and untenable theory that defies the

---

[1] The Court originally set a March 9, 2022 deadline for the Opposition. With Invesco's consent, Plaintiffs moved for a one-week extension, which the Court granted, moving Plaintiffs' deadline to March 16, 2022. On March 16, 2022, Plaintiffs' counsel obtained Invesco's counsel agreement to a further extension of two days. However, Plaintiffs did not file a motion requesting a further extension. Plaintiffs then filed their

1

clear terms of both the Trust Agreement[2] that governs Invesco's obligations with respect to the Trust's Beneficial Owners (and which the Complaint specifically references) as well as the Prospectus that Plaintiffs incorrectly claim is their contract with Invesco. Plaintiffs' theory would require ETF[3] sponsors to insure the losses—no matter how large—of arbitrage traders who engage in speculative trading outside the ETF based on even slightly inaccurate and quickly corrected ETF composition data—even when that data was explicitly and contractually intended only for other, authorized market participants; was not supplied by the sponsor; and even when the sponsor specifically disclaims any liability associated with that data.

Plaintiffs' Opposition underscores that Plaintiffs have not read, do not understand, or have deliberately ignored the Trust Agreement and the Prospectus, including by fundamentally misstating the nature and purpose of the "basket file" that is the central focus of the Complaint. Plaintiffs do not, and cannot, dispute that the basket file contains the composition of securities that only certain "Authorized Participants"—a select class of market participants with whom Invesco has preexisting contracts, *i.e.*, *not* Plaintiffs—may deliver or receive in exchange for a large block of shares of the Trust called Creation Units. And Plaintiffs cannot dispute that the Trust Agreement makes clear that Invesco has disclaimed any liability to anyone relying on that basket file. Rather

---

Opposition on March 18, 2022. Because Court approval for their extension was neither sought by Plaintiffs nor granted, Invesco files this brief on the date ordered by the Court, April 6, 2022.

[2] "Trust Agreement" refers to the NASDAQ-100 Trust, Series 1 Standard Terms and Conditions of Trust dated March 1, 1999, available at Dkt. No. 12-1, referenced throughout the Prospectus. The Prospectus also references a separate agreement between the Sponsor and Trustee, the "Trust Indenture and Agreement," which is publicly available and incorporates the Standard Terms and Conditions of Trust. Invesco does not refer to the Trust Indenture and Agreement in its Memorandum in Support of its Motion to Dismiss, Dkt. No. 11, or the Reply. Unless otherwise noted, all capitalized terms used in this Reply are defined in Invesco's Memorandum in Support of its Motion to Dismiss and maintain the same definitions herein.

[3] According to the New York Stock Exchange, as of December 31, 2021, there were 2,793 ETFs listed in the U.S. with $7.233 trillion of assets and an average daily transaction value of $160.52 billion. *See NYSE Arca Q4 2021 Quarterly ETF Report*, https://www.nyse.com/etf/exchange-traded-funds-quarterly-report#:~:text=2%2C793,ETFs%20listed%20in%20the%20U.S..

than admit that these clear and admissible contractual terms foreclose their claims, and that neither the Prospectus nor the Trust Agreement contains any obligation to deliver a basket file to Plaintiffs, the Opposition ignores them, choosing instead to throw more mud at the wall hoping it will stick.[4]

In light of the misstatements of law and ignorance of clear contractual terms in the Opposition, it becomes abundantly clear that the Complaint fails to adequately allege any breach by Invesco of any contract, even assuming Plaintiffs had provided a proper contract and that the Prospectus could be a contract under governing law. Moreover, Plaintiffs have neither identified any extra-contractual duty Invesco owes to them in tort nor identified any misrepresentation, negligent or otherwise, that Invesco has made to them, dooming their remaining claims. Plaintiffs' arguments to the contrary are sophistry, based entirely on a disregard of the definitive terms of the Trust Agreement and the terms of the Prospectus, which make plain that Plaintiffs have misused and misunderstood the basket file and that Invesco has disclaimed liability to Plaintiffs for their use of that file. For these reasons, as well as the others set forth in this Reply and Invesco's Memorandum in Support of Its Motion to Dismiss, Dkt. No. 11, Invesco respectfully requests that this Court dismiss the Complaint with prejudice.

## ARGUMENT

The Court should dismiss the Complaint with prejudice because Plaintiffs fail to adequately allege any breach of contract, negligence, or misrepresentation to Plaintiffs by Invesco. Indeed,

---

[4] For example, Plaintiffs argue that Invesco's position in this suit is "curious" because Invesco Ltd. (*not* Invesco Capital Management, LLC) once corrected a completely different error related to two entirely different funds with different terms governed by different documents. In that scenario, the S&P 500 (the index tracked by the two funds) announced that it would delay and separate rebalancing dates due to market volatility caused by the coronavirus pandemic. Invesco Ltd. accounted for the delay, but not the separation, and did not realize its error until three trading days later. Without any judicial determination of liability, Invesco Ltd. voluntarily made a financial contribution to the funds to compensate shareholders for performance differences during the three-day period. In any event, Plaintiffs' anecdote is unrelated and completely irrelevant to the facts and circumstances at issue in this Motion to Dismiss.

the Complaint and the judicially noticeable documents properly before the Court make clear that Plaintiffs have failed to plead any breach of contract, any extra-contractual duty owed by Invesco to Plaintiffs, or any misstatement by Invesco to Plaintiffs whatsoever.

### I. Plaintiffs Fail to Plead Breach of Contract.

Throughout their Opposition, Plaintiffs' mischaracterize Invesco's arguments and misstate the law. The Opposition does nothing to cure Plaintiffs' failure to identify an operative contract and does not even address the Trust Agreement. Further, the Opposition fails to defend Plaintiffs' mistaken assertion that the Prospectus is a contract. And, even if the Prospectus were a contract, the Opposition fails to even identify a term Invesco breached and blatantly ignores the other terms of the agreement, including Invesco's disclaimer of liability. Nor does it remedy Plaintiffs' failure to plead the remaining elements of a breach of contract claim: breach, performance, and damages.

#### A. Plaintiffs Fail to Provide an Operative Contract.

Fatal to their contract claim, and emblematic of Plaintiffs' casual disregard of basic pleading requirements, Plaintiffs have failed to provide a prospectus—even assuming it constitutes a contract (which it does not)—that was operative when Plaintiffs' alleged arbitrage trading occurred. Plaintiffs never explain how the January 31, 2021 Prospectus attached to the Complaint can possibly be a contract governing conduct that occurred five months earlier on August 31, 2020. For that most fundamental of reasons, Plaintiffs' breach of contact claim must be dismissed.

#### B. The Trust Agreement (Not the Prospectus) Governs Invesco's Obligations to the Trust's Beneficial Owners.

Plaintiffs misunderstand or deliberately ignore what the Motion to Dismiss argues with respect to Invesco's relationship with the Trust's Beneficial Owners. As the Motion to Dismiss explains, it is the Trust Agreement, not the Prospectus, that governs Invesco's obligations to Beneficial Owners. Indeed, the roles and responsibilities of the Trustee and Sponsor relating to

4

the management of the Trust, including their obligations to the Trust's Beneficial Owners, are set forth in the Trust Agreement and incorporated into the Prospectus. Dkt. 1-1 (Compl., Ex. A, 3).

The Opposition entirely ignores the Trust Agreement. And for good reason—the Trust Agreement is fatal to their breach of contract claim. Although Plaintiffs claim they relied on the basket file to their detriment, the Trust Agreement makes clear that Invesco has no liability for any such reliance or losses. It obligates the Trustee, not Invesco, to make certain calculations and disseminate the basket file, permits Invesco to rely on the Trustee's evaluations, and disclaims Invesco of any liability for the accuracy of the Trustee's evaluations. *See* Dkt. No. 12-1 §§ 2.04(g), (k); 4.03; 7.04(a). The Trust Agreement also makes clear that Invesco shall have no "liability, duty, or obligation to any Beneficial Owner . . . other than as expressly provided for" in the Trust Agreement. *Id.* § 7.04(a). Plaintiffs do not and cannot contest that the Trust Agreement is the relevant agreement between the parties. It clearly forecloses their breach of contract claim.

**C.** **A Prospectus Is Not A Contract.**

In addition to Plaintiffs' failure to attach a Prospectus that was in effect when they allegedly traded, and the fact that the Trust Agreement forecloses their claim, Plaintiffs' breach of contract claim fails for yet another fundamental reason: the Prospectus is not a contract. *See Edwards v. Sequoia Fund, Inc.*, No. 18 Civ. 4501 (GBD), 2018 WL 6039815, at *3-5 (S.D.N.Y. Oct. 18, 2018); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1093 (9th Cir. 2003) (prospectus did not serve as the basis for a contract between company and shareholders); *see also Emerald Invs. LP v. Equitable Life Assurance Soc'y*, No. 04 C 4285, 2005 WL 3470296, at *3 (N.D. Ill. Dec. 19, 2005) (prospectus was not part of the parties' contract).

Plaintiffs argue that "[a] prospectus . . . is (and has been upheld as) a binding contract." Opp. at 5. But they mischaracterize the holding of the single case they cite, *Northstar Fin., Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015). *Northstar* does not hold that a prospectus, standing

5

alone, is a binding contract. Instead, the Ninth Circuit held: "we conclude that the mailing of the proxy statement and the adoption of the two fundamental investment policies after the shareholders voted to approve them, and the annual representations by the Fund that it would follow these policies are sufficient to form a contract between the shareholders on the one hand and the Fund and the Trust on the other." *Id.* at 1054-55. The prospectus in *Northstar* "reflected the adoption of" the restrictive investment objectives by the shareholders of the mutual fund, and it was the shareholders' explicit adoption of those investment objectives that formed the basis of the contract. *Northstar* simply does not hold what Plaintiffs purport it to hold.

  The Court need not take Invesco's word for it. *Edwards* helpfully distinguishes *Northstar*, Plaintiffs' only case. *Edwards* explains that, contrary to Plaintiffs' characterization, "[t]he *Northstar* plaintiffs' claim for breach of contract was based, in part, on a proxy statement mailed to the shareholders. The proxy statement contained several proposals . . . . The shareholders voted to approve the proposals, and the prospectus and SAI of the trust's mutual fund were updated to reflect them. The plaintiffs alleged that the trust subsequently violated two policies in the approved proposals." 2018 WL 6039815 at *3 (citations omitted). The Ninth Circuit "relied upon the unique nature of the relationship created by the business trust and the shareholders' approval of the proposals to distinguish *Northstar*" from other cases holding that a prospectus cannot serve as the basis for a contract. *Id.* (citing *McKesson*, 339 F.3d at 1093; *In re Charles Schwab Corp. Sec. Litig.*, No. 08 Civ. 1510 (WHA), 2009 WL 1371409, at *5 (N.D. Cal. May 15, 2009)).

  *Edwards* further explains that the "fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties." *Id.* at *4 (citation and quotation marks omitted). But unlike in *Northstar*, "where policies were adopted after approval of the shareholders," the prospectus in *Edwards* "was adopted by Defendant alone." *Id.* So too here. Plaintiffs do not allege that the

6

Prospectus incorporates or ratifies any other agreement between Invesco and Plaintiffs, let alone an agreement relating to the basket file. In fact, Plaintiffs cannot even point to a specific provision in the Prospectus that underlies their breach of contract claim.

Rather than engaging with the merits of the court's analysis in *Edwards*, Plaintiffs attempt to dispel its clear holding that a prospectus cannot form the basis of a breach of contract claim by baldly asserting that this Court must ignore *Edwards* because the Second Circuit affirmed the district court's dismissal on other grounds. Opp. at 5-6. But of course, the fact that the Second Circuit did not reach this question does not make the district court's analysis any less persuasive.

### D. Even Assuming the Prospectus Is a Valid Contract, Plaintiffs' Claim Fails Because They Do Not Identify Any Term Invesco Has Breached and Ignore that Invesco Has Disclaimed Liability Associated with the Basket File.

Even if the Court were to find that a prospectus could form the basis of a contract, Plaintiffs fail to identify any contractual obligation Invesco owes them under the terms of the Prospectus. Plaintiffs repeatedly assert that Invesco must supply them with an accurate basket file, but cite no contractual provision obligating Invesco to do so. Instead, Plaintiffs speculate that the "swift decision to correct the error by issuing a new data file" must somehow imply that Invesco has a contractual obligation to Plaintiffs and vaguely suggest that Invesco would "be out of business" if it failed to provide accurate information. Opp. at 7. But Plaintiffs' conjectures cannot serve as a basis for a contractual breach. Plaintiffs do not and cannot point to any provision in the Prospectus (or the Trust Agreement) that entitles them to basket file data. And even if they could, the Prospectus explicitly says that Invesco "may rely in good faith" on the Trustee's evaluation of the basket file and "shall in no event be deemed to have assumed or incurred any liability, duty, or obligation" other than those expressly provided in the Trust Agreement, which of course, disclaims any liability by Invesco for the basket file. Dkt. No. 12-1 § 7.04(a).

Finally, Plaintiffs also fail to adequately allege performance and damages. Plaintiffs argue

7

that they performed under the alleged contract by paying Invesco fees to manage the Trust. Opp. at 7. But the Prospectus is clear that the Trust is not actively managed, and Invesco is not paid a management fee. Dkt. 1-1 (Compl., Ex. A, 3, 9). Plaintiffs, who allege damages based on trading done outside of the Trust, have never paid Invesco any management fees, nor have they paid Invesco or anyone else in connection with the basket file. With respect to damages, Plaintiffs only state that they "used the bad data file to engage in trading" and suffered losses, but the Complaint does not state when those trades occurred, barring their claim. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007).

## II. Plaintiffs Fail to Plead Gross Negligence.

Plaintiffs' gross negligence claim fails for the simple reason that the Trust Agreement makes clear that the basket file is not intended for any secondary market traders, including Plaintiffs. Further, under the Trust Agreement, Invesco disclaims all reliance on, and liability for, that file. These terms are fatal to Plaintiffs' negligence claims, yet Plaintiffs' conclusory, sparsely-cited argument does not even address them.

Allegations of gross negligence must show conduct amounting to "a high degree of negligence, an element of recklessness and the absence of the slightest degree of care." *Samoylovich v. City of Chicago*, No. 1-17-2962, 2019 WL 1462194, at *8 (Ill. App. Ct. 1st Dist. 2019 Mar. 29, 2019). Plaintiffs continue to baldly assert that publishing an inaccurate basket file constitutes such conduct, but have pointed to *nothing* to support that claim other than their purported losses. Similarly, Plaintiffs have alleged no facts giving rise to an extra-contractual duty on the part of Invesco to Plaintiffs, or any clear link between the basket file and their losses. The Trust Agreement is clear that the basket file is only intended for authorized market participants, not Plaintiffs, to use to create or redeem units of the Trust, and Invesco has "no responsibility for

8

the accuracy" of any evaluation, including the basket file, provided by the Trustee, precluding any errors in the basket file from constituting negligence. Dkt. No. 12-1 §§ 2.04(g), 4.03.

### A. Plaintiffs Fail to Allege a Duty on Behalf of Invesco.

Plaintiffs continue to argue, vaguely and conclusorily, that Invesco "as the manager of the ETF and provider of the information had a duty to provide accurate information." But the governing Trust Agreement precludes that argument, releasing Invesco from any liability for the accuracy of the basket file *and* making clear that the basket file is not directed at Plaintiffs.

Plaintiffs cite one inapposite case to support the argument that such a duty could exist— *FDIC v. Borowski*—in which an appointed receiver of a closed bank sued the bank's former directors for underwriting bad loans. No. 16 C 6250, 2016 WL 7188166, at *2 (N.D. Ill. Dec. 12, 2016). The *Borowski* court held that the receiver had sufficiently pleaded that the bank directors had a duty to exercise "reasonable care" in their approval of certain loans. *Id*. Plaintiffs use this inapposite factual scenario to argue that this holding somehow shows Invesco had a "duty to provide accurate information." Opp. at 8. But in *Borowski* the plaintiff oversaw the affairs of the bank to which the defendant owed fiduciary duties. 2016 WL 7188166, at *1. Here, Plaintiffs have not even properly alleged that they are in privity with Invesco, much less that Invesco owes them a contractual or extra-contractual duty with respect to the basket file. *See Holubek v. City of Chicago*, 497 N.E.2d 348, 350 (Ill. App. Ct. 1st Dist. 1986) (dismissing negligence claim predicated on a contract between defendant and non-litigant where the terms of the contract conferred no duty on the part of defendant to plaintiff). Instead, Plaintiffs point to a prospectus dated five months after the alleged trading occurred, which does not constitute a contract even if it were operative at the time the trading occurred, and then ignore the contract that *does* govern the relationship between Invesco and the Beneficial Owners, which disclaims Invesco's liability for

9

the basket file and makes clear that Plaintiffs could not rely on the basket file in the first place.

Even accepting, *arguendo*, that the Prospectus attached to the Complaint was in effect when Plaintiffs traded and is a valid contract, it actually undercuts their claims by demonstrating the true purpose of the basket file, which is not directed at secondary arbitrage traders like Plaintiffs. *See* Dkt No. 1-1 (Compl., Ex. A, 40). The Prospectus makes clear that the sole purpose of the basket file is to allow Authorized Participants—which Plaintiffs acknowledge they are not— to create and redeem Creation Units. Opp. at 1. And under the Trust Agreement, which governs the relationship between Invesco and Beneficial Owners, Invesco has disclaimed the accuracy of the basket file to any and all parties. Dkt. No. 12-1 § 4.03.[5] Plaintiffs have not cited any case law—nor does any exist—suggesting that some abstract duty exists between ETF sponsors and secondary market participants, such as Plaintiffs, concerning basket files. Nor have Plaintiffs even attempted to address the fact that Invesco specifically disclaims any liability or reliance by anyone on the basket file. If recognized, Plaintiffs' negligence theory could increase the exposure of investment managers to third-party liability to an untold degree.

Plaintiffs take umbrage at this argument, ignoring entirely the disclaimer in the governing

---

[5] Plaintiffs argue—without so much as a single citation—that Invesco should be precluded from using this disclaimer on a motion to dismiss because it is somehow an "affirmative defense." But Plaintiffs ignore that the Prospectus attached to the Complaint references and incorporates the Trust Agreement, and that the Trust Agreement is also a part of the Trust's registration statement, which Plaintiffs cite in their Complaint. Compl. ¶ 7. Of course, courts may properly dismiss a case when facts supporting the defense are set forth in the pleadings. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) ("when an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion"); *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008) ("As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude") (citation omitted). In addition, courts may also properly take judicial notice of the Trust Agreement because it is attached as an exhibit to the Trust's registration statement, filed on March 9, 1999, which is available record on the SEC's website. *See George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009). And even if Invesco's citation to these documents was incorrectly considered an "affirmative defense," the Court may still dismiss on such grounds. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (upholding a 12(b)(6) dismissal on the basis of a properly-alleged affirmative defense)*; SBT Holdings*, 547 F.3d at 36.

Trust Agreement that releases Invesco from liability as well as the risk inherent in arbitrage trading. At base, Plaintiffs have not alleged any facts supporting the existence of any extra-contractual duty Invesco owed to them, and, in any event, "implied extracontractual duties of care cannot impose greater obligations" on a defendant than those "expressly agreed to in the contract." *ARH Distrib., Inc. v. ITT Com. Fin. Corp.*, No. 87 C 511, 1987 WL 17834, at *3 (N.D. Ill. Sept. 28, 1987); *see Allstate Indem. Co. v. ADT LLC*, 110 F. Supp. 3d 856, 863 (N.D. Ill. 2015) (holding plaintiff failed to allege independent tort duty where the relationship was governed by contract); *Endencia v. ADT Sec. Serv., Inc.*, 08 C 4541, 2008 WL 4833111, at *2 (N.D. Ill. Oct. 28, 2008) (same). And even if some extra-contractual duty was well-pleaded, as sophisticated parties, Plaintiffs' market activities constitute a "voluntary encounter with a known risk" that precludes the imposition of a non-contractual duty on a defendant to guard against potential plaintiffs' injuries while engaging in such activity. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 511 (7th Cir. 2009).

    **B.    Plaintiffs Fail to Allege that Invesco Breached Any Duty or Proximately Caused Plaintiffs' Damages.**

Pursuant to the Trust Agreement and consistent with the Prospectus, Invesco has no duty to Plaintiffs to supply an accurate basket file and, even if it did, it could not have breached any duty to Plaintiffs with respect to the basket file because it expressly disclaimed liability for the accuracy of that basket file. Nor have Plaintiffs alleged how Invesco would have possibly benefited from publishing an inaccurate basket file. Plaintiffs cite to *Borowski* for their argument that Invesco publishing an inaccurate basket file constitutes gross negligence. Opp. at 9. As discussed above, *Borowski* supports no such contention because in that case, the defendants ignored blatant flaws in certain loans before approving them and failed to ensure they were properly underwritten, and the plaintiffs pointed to these gross missteps to allege gross negligence. 2016 WL 7188166, at *1-2. In contrast, here, Plaintiffs allege only that a single basket file (for

11

which Invesco has no responsibility) was briefly inaccurate and quickly corrected. Plaintiffs also continue to ignore the plain fact that the basket file is not intended to convey any information to Plaintiffs, and Invesco has disclaimed the accuracy of the basket file. Dkt. No. 12-1 § 4.03.

Plaintiffs fail to plead proximate causation because they are required to plead at least some specificity as to why their losses occurred, but they have not done so. *See Sadler v. Retail Prop. Of Am., Inc.*, No. 12 C 5882, 2014 WL 2598804, at *18 (N.D. Ill. 2014). Instead, Plaintiffs have only offered to "amend the Complaint to provide detailed records of the trading that occurred," thereby admitting that they have not pleaded those necessary facts. Opp. at 8.

### III. Plaintiffs Fail to Plead Negligent Misrepresentation.

Plaintiffs' arguments with respect to negligent misrepresentation fail for the fundamental reason that the Trust Agreement and Prospectus make clear that they have not adequately pled that Invesco had any duty to communicate accurate basket file data to arbitrage traders.

**A. The Heightened Pleading Standard of Rule 9(b) Applies to Plaintiffs' Averments of Fraud.**

Plaintiffs cite cases suggesting that negligent misrepresentation claims without any averment of fraud do not warrant Rule 9(b)'s heightened pleading standard. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 838 (7th Cir. 2007). This argument ignores their own allegations. The Complaint contends that Invesco "wrongfully manipulated, engineered and/or doctored" the basket file "so as to appear properly balanced." Dkt. 1-1 (Compl. ¶¶ 28, 43). The Opposition acknowledges that these "allegations use words that sound in fraud." Opp. at 11; *see Plestsov v. GTS Transp. Corp.*, No. 20-CV-1847, 2021 WL 534666, at *3 (N.D. Ill. Feb. 12, 2021) (allegations of "'doctored' logbooks" were "acts of deception" constituting averments of fraud to which 9(b) applies regardless of whether plaintiffs brought a fraud claim) (citations omitted). That Plaintiffs have labeled their claim "negligent misrepresentation" does not

relieve them of their obligation to specify how and under what circumstances Invesco "wrongfully manipulated, engineered, and/or doctored" the basket file. *See Plestsov*, 2021 WL 534666, at *3; *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud") (citations omitted).

### B. The Disclaimer in the Trust Agreement is Valid.

Plaintiffs' argument that the disclaimer in the Trust Agreement is invalid fails on its face. The disclaimer expressly states that Invesco shall "have no responsibility for the accuracy" of any evaluation provided by the Trustee for use in calculating the basket file, and "shall in no event have been deemed to assume or incurred any liability, duty, or obligation, to any Beneficial Owner or to the Trustee other than as expressly provided for herein." Dkt. No. 12-1 §§ 4.03, 7.04(a). Invesco has clearly disclaimed liability with respect to the accuracy of the basket file.

Amazingly, Plaintiffs advance that argument by asserting that they, as experienced arbitrage traders who could have chosen a myriad of other public or private investments, are the victims of uneven "bargaining power." Opp. at 11. But Plaintiffs are a far cry from the types of parties that courts have determined had no "meaningful choice" in their decisions to enter into a contract. *Compare Cisneros v. Am. Gen. Fin. Servs.*, No. C 11-02869, 2012 WL 3025913, at *5 (N.D. Cal. July 24, 2012) (party did not speak or read English, was not offered a translation of the contract, and only signed to force a sales representative to leave her home) *with* Compl. ¶¶ 11-12 ("Plaintiff XDG is an investment advisor which provides investment management services for certain sophisticated investors, such as Plaintiffs EVPL, EVML, and JSSI" and "Plaintiff Salsburg is the principal of XDG"). But even if they were, "Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called 'take-it-or-leave-it' deal" and "adhesion contracts are a fact of modern life." *Sharp v. Bank of Am., N.A.*, No. 19 C 5223,

2020 WL 1543544, at *5 (N.D. Ill. Mar. 31, 2020) (citations omitted).

Even if unequal bargaining power did exist here (it does not), the two cases Plaintiffs cite in support of the position that "the disclaimer cannot be enforced against Plaintiffs under the public policy exception and superior position Defendant has in negotiating" are inapposite. Opp. at 11. In neither case did the courts disregard disclaimers; in fact, both courts *enforced* limitations on liability and damages and construed them strictly against the benefiting party. *See Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1174-75 (Ill. App. Ct. 2nd Dist. 2015) (recognizing "the strong public policy favoring freedom of contract" and holding that limitation-of-liability clause did not bar damages); *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, No. 05 C 5661, 2009 WL 1033373, at *4-5 (N.D. Ill Apr. 17, 2009) (holding that bar on lost profit damages did not preclude diminution-in-value damages).

### C. Plaintiffs Fail to Allege the Remaining Elements of their Negligent Misrepresentation Claim.

In addition to being subject to Rule 9(b)'s heightened pleading standard, Plaintiffs have not pled the basic elements of a negligent misrepresentation claim. Plaintiffs must allege that Invesco owed them a duty to communicate accurate information. *Browning v. Eckland Consultants, Inc.*, No. 1-03-3607, 2004 WL 2687961, at *5 (Ill. App. Ct. 1st Dist. Aug. 13, 2004). As discussed above, Invesco has no such extra-contractual duty in tort. *See ARH Distrib., Inc*, 1987 WL 17834, at *3; *Allstate*, 110 F. Supp. 3d at 863; *Endencia*, 2008 WL 4833111, at *2. Even if it did, the Trust Agreement's disclaimer definitively forecloses Plaintiffs' claim. Dkt. No. 12-1 §§ 2.04(g), (k); 4.03; 7.04(a).

Plaintiffs contend that, by alleging the number of shares by which the basket file was off, they have sufficiently pled a "false statement of material fact." They further assert that they can allege scienter through "gross indifference or reckless disregard," but have not alleged anything

beyond the fact that the basket file contained inaccurate data that "may have" been "doctored." Compl. ¶¶ 23, 27-28. Without pointing to any possible motive for Invesco to "doctor" the basket file's data, Plaintiffs have not sufficiently pled scienter. The lone case Plaintiffs cite, *Rehm v. Eagle Fin. Corp.*, explains that a "plaintiff must do more than speculate as to defendants' motives or make conclusory allegations of scienter; plaintiff must allege specific facts." 954 F.Supp. 1246, 1254 (N.D. Ill. 1997). By their own case law, then, Plaintiffs fall woefully short of stating a claim.

The plain terms of the Prospectus and the Trust Agreement, which make clear the true purpose of the basket file and the fact that Invesco disclaims any responsibility for its accuracy, vitiate Plaintiffs' allegations that Invesco "intended Plaintiffs . . . to act on its faulty data" and that they reasonably relied on that data. Dkt. 1-1 (Compl. Ex. A., 15-16, 48, 50); Dkt. No. 12-1 § 4.03. Plaintiffs therefore knew or should have known of the purpose of the basket file and the disclaimer. No trier of fact could find that their reliance was reasonable and that question can be resolved on this motion. *See H&S Bldg. Inv., LLC v. Irani*, No. 1-187-0614, 2017 WL 6762434, at *3 (Ill. App. Ct. 1st Dist. Dec. 29, 2017) (disclosure of lot size in deed agreement materials rendered plaintiff's reliance on false description from realtor unreasonable as a matter of law); *see also Torello v. Napleton's Auto Werks, Inc.*, No. 16 C 2435, 2018 WL 1174395, *3 (N.D. Ill. Mar. 6, 2018) (where plaintiff signed contracts failing to realize they did not contain a provision they expected, no trier of fact could find their reliance reasonable).[6]

## CONCLUSION

For the reasons set forth above and in its Memorandum in Support of its Motion to Dismiss, Invesco respectfully requests that this Court dismiss the Complaint with prejudice.

---

[6] Plaintiffs argue that the Court may not consider unpublished cases under Illinois Supreme Court Rule 23(e); however, the Local Rules of the U.S. District Court for the Northern District of Illinois apply here, which have not adopted Rule 23(e).

15

Dated: April 6, 2022 Respectfully submitted,

   */s/ Nicholas M. Berg*

Nicholas M. Berg
Anne C. Monjar
John L. Wolf
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Nicholas.Berg@ropesgray.com

Devon A. Caton
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199

*Attorneys for Defendant*
*Invesco Capital Management, LLC*

**CERTIFICATE OF SERVICE**

I, Nicholas M. Berg, hereby certify that the foregoing document was electronically filed on April 6, 2022, and will be served upon the registered parties electronically via email and the Court's ECF Notice system.

*/s/ Nicholas M. Berg*

Nicholas M. Berg
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Nicholas.Berg@ropesgray.com

*Attorney for Defendant Invesco Capital Management, LLC*