**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JEREMY SALSBURG, XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC.,** ) ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **Case No. 21 C 6343** |
| **INVESCO CAPITAL MANAGEMENT, LLC,** ) ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc. have filed this lawsuit against Invesco Capital Management, LLC. The Court's jurisdiction is based on diversity of citizenship. Invesco is an investment company that offers the Invesco QQQ Series 1 ETF (the ETF), an ETF[1] that tracks the composition of the Nasdaq 100 Index. The plaintiffs are investors that engage in arbitrage trading, a kind of trading that exploits small differences in asset prices between two or more markets.

Invesco occasionally adjusts "the weight and composition of the ETF's securities to correspond to changes in the Index." Am. Compl. ¶ 17. It may increase or decrease

---

[1] An ETF or exchange-traded fund is a basket of securities, like stocks and bonds, that tracks an underlying index.

the quantity of shares of specific companies that the ETF owns. Invesco may also add or remove companies from the ETF's basket of securities when those companies are added or removed from the Index. Invesco regularly publishes data files containing information about the composition of the ETF, "including the quantity of shares that the ETF owns for each individual Index constituent company per 50,000 shares of the ETF." *Id.* ¶ 16.

The plaintiffs allege that they rely on the daily data file from Invesco to engage in trading and have done so for at least five years. According to the plaintiffs, however, the data file that Invesco transmitted on August 28, 2020 contained inaccurate information regarding the ETF's composition for the August 31, 2020 trading date. Specifically, the plaintiffs allege that the data file incorrectly represented "that 42,039 shares of Apple and 3,584 of Tesla were in the Basket" and that it "was further inaccurate by reducing the quantities of each and every one of the other 101 Basket member stocks by a factor of 1.55 to perfectly offset the inaccurately inflated share quantities of Apple and Tesla so that the data file error could not be easily detected." *Id.* ¶¶ 24, 25. The plaintiffs further allege that they relied on this inaccurate information to engage in trading and lost more than $2.5 million as a result.

The plaintiffs filed this suit in state court, bringing claims for breach of contract, gross negligence, and negligent misrepresentation. Invesco removed the case to this district and filed a motion to dismiss for failure to state a claim. Without responding to Invesco's motion, the plaintiffs filed a motion to remand. The Court later denied the motion and ordered briefing on Invesco's still-pending motion to dismiss.

The motion is now fully briefed and ready for adjudication. For the following

2

reasons, the Court dismisses the plaintiffs' breach of contract claim but declines to dismiss their other two claims.

## Discussion

The question on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is whether the complaint states "a claim to relief that is plausible on its face." *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citation omitted). In deciding the motion, the court must take "true all well-pleaded factual allegations and mak[e] all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citation omitted). Still, the plaintiff must provide "some specific facts to support the legal claims asserted" and cannot rely on conclusory allegations to sustain his claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted).

### A.    Breach of contract

To state a claim of breach of contract under Illinois law, a plaintiff has to plead four elements:  (1) existence of a contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach of the contract; and (4) damages sustained as a result of the breach. *Int'l Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 450, 907 N.E.2d 478, 487 (2009).  The plaintiffs allege that the ETF's prospectus[2] is a contract that obligates Invesco to provide them with accurate information regarding the composition of the ETF.  As previously discussed, they further allege that they performed under the contract by paying Invesco and that they relied on the data file to engage in arbitrage

---

[2] A prospectus is a document required by and filed with the Securities and Exchange Commission containing information about an investment offering to the public.

3

trading and lost $2.5 million as a result.

Invesco contends that the Court should dismiss the plaintiffs' claim because they fail to adequately plead each of the above elements. The Court need not address all of Invesco's arguments, however, because it finds that the plaintiffs have not adequately pleaded the third element—the defendant's breach—and dismisses the claim on this ground. The Court reaches no conclusion regarding Invesco's other arguments.

The key problem with the plaintiffs' breach of contract claim is that they fail to identify any contractual provision that obligates Invesco to provide them with accurate data. Although the plaintiffs allege that the prospectus constitutes a contract between them and Invesco, they do not point to any provision of the prospectus or anything else that indicates that Invesco is obligated to provide them with accurate data. Instead, the plaintiffs attempt to establish the existence of this obligation through their allegations that Invesco corrected the August 31, 2020 error shortly after discovering it and that Invesco agreed to pay damages in connection with a previously disclosed rebalancing error. But these allegations are immaterial to the question of whether Invesco had a contractual obligation to provide accurate data. Even drawing all possible inferences in the plaintiffs' favor, Invesco's past actions merely suggest that it had a practice to correct such mistakes. This in no way supports the plaintiffs' contention that Invesco had a contractual obligation to do so.

## B. Gross negligence

The plaintiffs' second claim alleges gross negligence. Under Illinois law, there are four elements of a negligence claim: duty, breach, proximate cause, and damages. *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479, ¶ 29, 973

N.E.2d 880, 890.  In addition to these elements, claims for gross negligence also require a showing of "a high degree of negligence, an element of recklessness and the absence of the slightest degree of care."  *Samoylovich v. City of Chicago*, 2019 IL App (1st) 172962-U, 2019 WL 1462194.  Invesco argues that the plaintiffs fail to adequately plead duty, breach, and damages.

      **1.    Duty**

On the element of duty, Invesco makes three separate points, none of which are persuasive.  First, Invesco essentially rehashes the same arguments that it made on the breach of contract claim, arguing that it does not have a duty from the prospectus.  It argues that the prospectus is not a contract, and that even if the prospectus is a contract, it does not obligate Invesco to provide the plaintiffs with accurate data.  The lack of contractual duty, however, does not foreclose the possibility that Invesco has an extra-contractual duty to provide accurate information to the plaintiffs.

Invesco's second argument is that the economic loss doctrine—known as the *Moorman* doctrine—bars the plaintiffs' claims.  *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).  The doctrine does not apply here, however, because the plaintiffs allege an extra-contractual duty to provide them with accurate data.  Where the duty arises outside a contract, the economic loss doctrine does not apply.  *Golf v. Henderson*, 376 Ill. App. 3d 271, 279, 876 N.E.2d 105, 113 (2007) ("The *Moorman* doctrine, however, does not apply when a duty arises that is extracontractual.").

Lastly, Invesco argues that it does not have an extra-contractual duty to the plaintiffs, for two reasons.  First, Invesco contends that there is a disclaimer in the trust

agreement[3] that forecloses the possibility of an extra-contractual obligation to provide accurate information. The trust agreement, which Invesco contends is binding on the plaintiffs, contains a provision that states that Invesco "may rely in good faith on any paper, order, notice, list, affidavit, receipt, evaluation [and] opinion . . . submitted to it by the Trustee." Dkt. no. 12-1 § 7.04(a). Invesco contends that this provision absolves it of liability because the data file is based on calculations submitted to it by the Trustee. The trust agreement also states that Invesco shall "have no responsibility for the accuracy" of any evaluation provided by the Trustee and "shall in no event be deemed to have assumed or incurred any liability, duty, or obligation, to any Beneficial Owner or to the Trustee other than as expressly provided for herein." *Id.* §§ 4.03, 7.04(a). Regarding this last provision, Invesco contends that "the Trust Agreement is devoid of any liability, duty, or obligation that Invesco has to Plaintiffs concerning" the data file, so it does not have such a duty. Defs.' Mot. at 5.

The Court disagrees that the so-called disclaimer forecloses the possibility of an extra-contractual duty to the plaintiffs (or that it exculpates Invesco from a breach, if that is what it is contending). Even assuming that the trust agreement represents a contract between Invesco and the plaintiffs, the language of the cited provision is not sufficient to relieve Invesco of the specific duty that the plaintiffs allege it breached. Under Illinois law, an exculpatory clause must "contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." *Platt v.*

---

[3] The Standard Terms and Conditions of Trust describe the roles and responsibilities of the Trustee and Sponsor (Invesco) regarding the management of the Trust.

*Gateway Int'l Motorsports Corp.*, 351 Ill. App. 3d 326, 330, 813 N.E.2d 279, 283 (2004). The provision in the trust agreement does not meet this requirement. It does not explicitly state that it relieves Invesco of liability under tort law, and it does not specify what types of activities it encompasses. Instead, it only generally states that Invesco has not "assumed or incurred any liability." This is not enough to bar the plaintiffs' tort claims.

Invesco's second argument supporting its contention that it does not have an extra-contractual duty to the plaintiffs is that public policy considerations weigh against a duty of care. In Illinois, courts look at four policy considerations to determine whether there exists a duty of care: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 511 (7th Cir. 2009). Invesco argues that public policy supports its position because the plaintiffs' position would increase exposure of investment managers to third parties, expanding liability to a potentially infinite degree. In contrast, the plaintiffs argue that Invesco intended for the data file to reach them and that it is clearly foreseeable that inaccurate data would cause damages.

The Court agrees with the plaintiffs. The amended complaint plausibly alleges that losing money from bad trades was a reasonably foreseeable and likely result of being provided with inaccurate information in the data file. The plaintiffs allege long-term use of the data file for arbitrage trading, a type of trading that requires accurate information given its reliance on very small differences between asset prices in different markets. The plaintiffs also sufficiently allege that the burden on Invesco of guarding

7

against inaccuracies in its data files is relatively low, given that it already has a strong business incentive to make the data files as accurate as possible. With respect to Invesco's argument, the Court finds it unlikely that the plaintiffs' claim would infinitely increase the legal liability of investment managers as Invesco contends. As discussed more fully in the next section, the plaintiffs plausibly allege that they were the targets of Invesco's data file. And they do not suggest, as Invesco contends, that liability should be extended to all third-party traders. For these reasons, the Court concludes that the plaintiffs have sufficiently alleged, for purposes of the motion to dismiss, the existence of an extra-contractual duty on the part of Invesco to provide them with accurate information in its data files.

### 2. Breach

Invesco contends that the plaintiffs fail to adequately plead the requisite mental state for gross negligence. First, Invesco argues that it could not have been grossly negligent vis-à-vis the plaintiffs because the data file was not meant for them. Instead, Invesco argues, the data file was disseminated for select participants that do not include the plaintiffs.

Although it is conceivable that Invesco may establish this point, it is not a basis for dismissal for failure to state a claim. The plaintiffs sufficiently allege facts that support an inference that the data file was directed towards them. Specifically, they allege that the data file was transmitted to all investors and that they had been using the information daily for at least five years. Drawing inferences in the light most favorable to the plaintiffs, the Court finds that the plaintiffs plausibly alleged that the data file was directed towards them.

Invesco also argues that the plaintiffs do not adequately plead gross negligence because they do not allege what Invesco would have gained from publishing an inaccurate data file. The Court overrules this argument. Nothing in the case law suggests that, to state a claim of gross negligence, the plaintiff must plausibly allege a motive for the defendant to act negligently. Doing so would inappropriately increase the threshold for proving gross negligence to something more akin to intentional conduct. Because the plaintiffs plausibly allege that Invesco exhibited a high level of negligence in publishing the inaccurate data file, the Court concludes that they have sufficiently alleged the breach element of their gross negligence claim.

### 3. Damages

Invesco contends that the plaintiffs fail to sufficiently plead damages because they do not specify what trades they made and how they relied on the data file. The bottom line is that this sort of detail is not required in a federal complaint. The plaintiffs allege that they engage in arbitrage trading, that they relied on the data file for years to determine the composition of the ETF, and that their reliance on Invesco's inaccurate data file caused them losses exceeding $2.5 million. This is sufficient to plead damages caused by Invesco's gross negligence. The plaintiffs are not required to allege in their complaint the specific trades that resulted in their losses.

### C. Negligent misrepresentation

Lastly, the plaintiffs assert a claim for negligent misrepresentation. The elements of such a claim under Illinois law include:

> (1) a false statement of material fact, (2) carelessness or negligence in
> ascertaining the truth of the statement by the party making it, (3) an
> intention to induce the other party to act, (4) action by the other party in
> reliance on the truth of the statement, and (5) damage to the other party

resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information.

*Fox Assocs. v. Robert Half Int'l*, 334 Ill. App. 3d 90, 94, 777 N.E.2d 603, 606 (2002). Invesco contends that the plaintiffs fail to adequately plead each of these elements. Additionally, it contends that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to the plaintiffs' purported averments of fraud and that their allegations fail to satisfy that standard.

### 1. Rule 9(b) pleading standards

Invesco contends that the plaintiffs' negligent misrepresentation claim is subject to the heightened pleading standards of Rule 9(b). Specifically, it points to the plaintiffs' allegation that it "wrongfully manipulated, engineered and/or doctored" data "to appear properly balanced" and argues that this allegation demonstrates that the plaintiffs' claim sounds in fraud. Am. Compl. ¶ 28. In response, the plaintiffs argue that their claim is not subject to the Rule 9(b) standards because, under Illinois law, negligent misrepresentation claims are evaluated under Rule 8. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 838 (7th Cir. 2007) (applying the Rule 8 standard to a negligent misrepresentation claim). Invesco responds that Rule 9(b) applies to averments—not claims—of fraud, so regardless of the label of the claim, the Rule applies if the claim "is premised upon a course of fraudulent conduct." *See Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007).

The Court agrees with Invesco that Rule 9(b) applies to averments, not claims, so the label of the claim is not dispositive. But ultimately the Court concludes that Rule 9(b) does not apply because the plaintiffs' claim is not premised upon a course of fraudulent conduct. Although the allegation Invesco cites could be interpreted as an

allegation of fraud, the plaintiffs' negligent misrepresentation claim overall does not depend upon a course of fraudulent conduct. The plaintiffs can state a viable claim by alleging that Invesco was careless or negligent in disseminating the false information; they need not show that it acted fraudulently. Because the claim is not premised on a course of fraudulent conduct, Rule 9(b) does not apply.

### 2. False statement of material fact

Invesco argues that the plaintiffs fail to provide sufficient detail regarding the alleged false statement. Not so. The amended complaint specifies the alleged misrepresentation and also states what the correct representation should have been. In paragraph 24, the plaintiffs allege that Invesco's August 28, 2020 "data file was inaccurate- stating that 42,039 shares of Apple and 3,584 of Tesla were in the Basket." Am. Compl. ¶ 24. Paragraph 25 contains an allegation that the data file was "inaccurate by reducing the quantities of each and every one of the other 101 Basket member stocks by a factor of 1.55 to perfectly offset the inaccurately inflated share quantities of Apple and Tesla so that the data file error could not be easily detected." *Id.* ¶ 25. Lastly, paragraph 27 provides the information that the plaintiffs allege that Invesco should have included in the first place: "16,325 shares of Apple and 1,113 shares of Tesla." *Id.* ¶ 27.

### 3. Carelessness or negligence

On this element, Invesco argues that the plaintiffs do not adequately plead scienter because they do not allege a motive for Invesco to publish inaccurate information. This is the same argument Invesco makes on the gross negligence claim, and for the same reasons, the Court overrules it. The plaintiffs are not required to show

that Invesco would have gained from its misrepresentation. It is enough that the plaintiffs plausibly allege—as they have—that Invesco was careless or negligent in publishing the false information.

### 4.    Duty owed by the defendant

Invesco makes several arguments in contending that the plaintiffs have not plausibly alleged that it had a duty—all of which mirror arguments that it made regarding the other claims. First, Invesco argues that it did not owe a duty to the plaintiffs because the data file was not targeted at them. Second, Invesco contends that it does not have a duty from the prospectus. Third, it contends that the disclaimer in the trust agreement forecloses the argument that it had a duty. For the reasons given above, the Court overrules these arguments.

### 5.    Intent to induce the plaintiffs to act

Invesco argues that the plaintiffs fail to plausibly allege that it had an intent to induce them to act because the data file was intended for other people and not the plaintiffs. As previously stated, whether the data file was directed towards the plaintiffs involves a factual dispute that is not appropriate for resolution on a motion to dismiss.

### 6.    The plaintiffs reasonably relied on the data file

Invesco argues that the plaintiffs' reliance on the data file was not reasonable for two reasons. Neither warrant dismissal at this point. First, Invesco argues that the plaintiffs misused the data file because it was intended only for authorized participants. Again, whether the plaintiffs were Invesco's intended target involves a question of fact that cannot be determined at this point.

Second, Invesco argues that it was not reasonable for the plaintiffs to rely on the

12

data file given the disclaimer in the trust agreement. Whether it was reasonable for the plaintiffs to rely on the data file, however, is a question of fact. Even with the presence of the disclaimer, the plaintiffs have sufficiently alleged that they relied on the data file for years, which suggests that it would be reasonable for them to continue to rely on the data file. The plaintiffs also make allegations suggesting that it was common for investors to rely on such data files. Construing these allegations in the light most favorable to the plaintiffs, the Court finds that they have sufficiently alleged that they reasonably relied on Invesco's data file.

### 7. Damages

As with the other claims, Invesco contends that the plaintiffs' allegations are too vague and do not describe how their reliance on the data file caused their losses. For the reasons set out above, the Court overrules this argument.

### Conclusion

For the foregoing reasons, the Court dismisses count one of the plaintiffs' amended complaint but otherwise denies the defendant's motion to dismiss [dkt. no. 10]. The Court directs the defendants to answer the remaining claims by no later than May 27, 2022. Rule 26(a)(1) disclosures are to be made by June 3, 2022. The parties are directed to confer regarding a discovery and pretrial schedule and are to file on June 10, 2022 a joint status report with an agreed proposed schedule or alternative proposals if they cannot agree. The case is set for a telephonic status hearing on June 17, 2022 at 8:45 a.m. The Court reserves the right to vacate the hearing if it determines

a hearing is not needed.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 6, 2022