**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JEREMY SALSBURG; XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC., <br><br> Plaintiffs, <br> v. <br><br> INVESCO CAPITAL MANAGEMENT, LLC. <br><br> Defendant. | Case No. 1:21-cv-06343 <br><br><br> Hon. Matthew F. Kennelly |

## JOINT STATUS REPORT

Pursuant to the Court's November 11, 2022 Order (ECF No. 95), and in advance of the January 18, 2023 status hearing, Plaintiffs Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc. (collectively, the "Plaintiffs") and Defendant Invesco Capital Management, LLC ("Invesco" or "Defendant"), through their respective counsel, respectfully submit the following Joint Status Report regarding the status of discovery.

### I. DISCOVERY-RELATED DEADLINES

By order dated June 16, 2022 (ECF No. 81), the Court set the following discovery–related deadlines:

### A. Current Fact Discovery Deadlines

- <u>February 3, 2023:</u> Document production is to be substantially completed.

- <u>February 17, 2023:</u> Deadline to serve notices of depositions and subpoenas seeking third party documents and / or depositions.

- <u>March 3, 2023:</u> Fact discovery is to be complete.

**B. Current Expert Discovery Deadlines**

- <u>January 20, 2023:</u> Deadline to make Federal Rule of Civil Procedure 26(a)(2) disclosures.

- <u>February 17, 2023:</u> Deadline to serve opening expert report; deadline to make rebuttal disclosures.

- <u>March 17, 2023:</u> Deadline to serve rebuttal expert report.

- <u>April 7, 2023:</u> Deadline to complete expert depositions.

- <u>April 21, 2023:</u> Close of discovery.

**C. Proposed Revisions to the Discovery Schedule**

As described in more detail below, ongoing document discovery has revealed the importance of third parties, whose depositions Plaintiffs and Invesco wish to complete before deposing party witnesses or identifying testifying experts. Plaintiffs have also refused to produce their trading algorithm, which has further delayed Invesco's search for and retention of an expert. For those reasons, the parties respectfully request that the Court extend certain discovery deadlines as outlined below and reset the deadlines for expert discovery such that they immediately follow, rather than overlap with, fact discovery.

**a. Fact Discovery**

- <u>February 3, 2023:</u> Document production is to be substantially completed.

- <u>February 17, 2023:</u> Deadline to serve notices of depositions and subpoenas seeking third party documents and / or depositions.

- <u>May 12, 2023:</u> Fact discovery to be complete.

**b. Expert Discovery**

- <u>May 19 2023:</u> Deadline to make Federal Rule of Civil Procedure 26(a)(2) disclosures.

- <u>June 23, 2023:</u> Deadline to serve opening expert report; deadline to make rebuttal disclosures.

- <u>July 14, 2023:</u> Deadline to serve rebuttal expert report.

- <u>July 28, 2023:</u> Deadline to complete expert depositions.

- <u>August 4, 2023:</u> Close of discovery.

## II. PROGRESS OF DISCOVERY

Where indicated below, each party has provided its own positions. Each party's position is its own and does not reflect the position of any other party.

### A. Document Production and Written Interrogatories

<u>*Plaintiffs' Position*</u>.

Despite the usual back and forth, Plaintiffs have produced all requested interrogatories, documents and communications, in native format where possible, PDF where not, and for 749 emails, both upon request. The parties are collaborating on multiple minor technology-related issues, which the parties anticipate will be resolved shortly.

Defendant continues to insist that Plaintiff Salsburg produce his trading algorithm, which is a closely guarded trade secret and irrelevant to this case. Defendant admits an error was made in the Basket File, and Discovery has shown this erroneous data was propagated widely throughout the industry including to the top data providers Bloomberg and DTCC. Moreover, Discovery has confirmed Plaintiffs' allegation that the Basket File was not simply erroneous—but it was, in fact, doctored by an arbitrary factor of 1.55 to make it appeared to be balanced. One of Invesco's produced emails confirms, "These calculated overweight projections in Apple and Tesla have put an underweight calculation on all other constituents (36% lower than they should be)," while another states, "On the roundtable meeting it was brought up by capital markets on what we are doing to verify these baskets and how bad this makes us look even if BNY creates these baskets."

The metadata of Invesco's corrected basket created by Invesco employee, Elizabeth Despain, and received by Plaintiffs' file indicates it was not even created, let alone, distributed,

until 13 minutes after the equity market open. That is, after materially all of the losses by Plaintiffs were incurred.

Given the above, Defendant has nothing relevant to gain by inspecting the highly secret intellectual property that makes up the core of Plaintiffs Salsburg and XDG's intellectual property to determine it did not have logic for detecting an intentionally doctored data file. On the other hand, Plaintiff Salsburg's entire business would be jeopardized by producing it. The element of the algorithm that ingested the defective Basket File simply follows the DTCC's industry standard data fields for the import and export of basket files. Even with a protective order, disseminating it could result in its accidental disclosure, or be used by Defendant to incorporate in a competing strategy, even if it was used on an index other than the QQQ. Invesco manages an arbitrage strategy called the Invesco India Arbitrage Fund. *See https://www.invescomutualfund.com/docs/default-source/default-document-library/invesco-indi-arbitrage-fund*. The risk to Plaintiff Salsburg far outweighs Defendant's request for discovery of this top-secret intellectual property especially when it indisputably will not lead to any relevant facts.

*Defendant's Position.*

The parties have each responded to written interrogatories and produced documents, and they are continuing to engage in document discovery. The parties continue to meet and confer regarding Plaintiffs' interrogatory responses, which Invesco believes are inadequate. Through a series of meet-and-confers and lawyer letters, the parties have also resolved a number of other discovery disputes, and they are hopeful that—with the exception described below—they can continue to resolve their differences without requesting the Court's intervention. Invesco reserves all rights to file additional discovery motions if and when doing so becomes necessary.

Despite Invesco's repeated requests, however, Plaintiffs have refused to produce Plaintiff Salsburg's arbitrage trading algorithm, which is at the heart of his and the other Plaintiffs' allegations. Plaintiffs have unilaterally declared the algorithm "irrelevant to this case" because Invesco has "admit[ted] an error was made" with the basket file. *See* II.A, *supra*; Ex. A at 4, 6. To be clear, while there is not a dispute over whether there was an error in the basket file, Invesco maintains that Bank of New York Mellon corrected and disseminated the basket file prior to market opening. But even if Plaintiffs were correct regarding the timing of the corrected basket file, it is irrelevant to the algorithm's relevance. Invesco has *not* conceded in any way that any error in the basket file *caused* Plaintiffs' alleged damages, and Invesco is entitled to take discovery concerning whether and to what extent Plaintiffs' trading losses were caused by Plaintiffs' own errors or trading strategies, including the algorithm. Plaintiffs' incorporation of the basket file data into their algorithm is at the very core of this case, and Invesco has every right to explore Plaintiffs' allegations against it. *See* Ex. B at 5; Ex. C at 3.

Plaintiffs have also refused to produce the algorithm because they claim it is a "trade secret" that Invesco would use to implement its own arbitrage strategies. As Invesco has repeatedly reminded Plaintiffs, however, this Court entered a confidentiality order (ECF No. 31) that was proposed and agreed to by all parties to this case, including Plaintiff Salsburg. *See* Ex. A at 7; Ex. B at 4-5. That confidentiality order includes added protections for "highly confidential information," such as "trade secrets." (ECF No. 31 at 2). Plaintiffs have not adequately explained how the confidentiality order they agreed to sign is insufficient to protect their supposedly "trade secret" algorithm: if Plaintiffs produce the algorithm and designate it "highly confidential," the parties will be subject to a Court order not to disclose or permit the algorithm's disclosure, and Defendant's outside counsel will be prohibited from sharing the algorithm with Invesco. (*Id.* at

4–5). Nor have Plaintiffs explained how Invesco would use the algorithm to Plaintiffs' detriment. Instead, Plaintiffs have asserted, without any support, that Invesco somehow competes with Plaintiffs through "a competitive ETF Arbitrage fund." Ex. A at 4, 5, 6. But Invesco has made clear that it does not have an "ETF Arbitrage fund" or otherwise arbitrage against the very funds it sponsors; nor does Invesco, one of the world's largest ETF sponsors, compete in any way with Plaintiff Salsburg's relatively tiny algorithmic arbitrage operation. *See* Ex. B at 4; Ex. C at 2-3.

For the very first time in this joint status report, Plaintiffs identify a fund called the Invesco India Arbitrage Fund, which is run by Invesco Mutual Fund (not by defendant Invesco Capital Management, LLC) as a competitive risk. The document Plaintiffs cite demonstrates, however, that this is *not* an ETF arbitrage fund, and it does not employ a strategy like Plaintiffs' arbitrage of the QQQ ETF. (For example, the document explains that the India Arbitrage Fund's "scheme does not take any directional exposure to equities and predominately observes a 'Long Cash – Short Future' strategy" and that it arbitrages the "difference in pricing between cash and derivatives markets," not between ETFs and their component parts). But whether the Invesco India Arbitrage Fund competes with individual Plaintiff Jeremy Salsburg is beside the point: the Agreed Confidentiality Order is clear that Highly Confidential Information "shall not be used or disclosed . . . for any purpose whatsoever other than in this litigation," and that "counsel for the parties shall not disclose or permit the disclosure of any Highly Confidential Information to" the parties themselves (ECF No. 31 §§ 6(a), (b)). If Plaintiffs produce the arbitrage trading algorithm, Invesco India Arbitrage Fund will not, and is prohibited from, using it to compete. In short, Plaintiffs have failed to support their assertion that "Plaintiff Salsburg's entire business would be jeopardized by producing" the algorithm, as Invesco intends to explain in further detail in its motion to compel.

The parties have thus reached an impasse with respect to Plaintiffs' refusal to produce the arbitrage trading algorithm, and Invesco anticipates filing a motion to compel its production if the Court does not wish to resolve this dispute at the upcoming status hearing. Without access to the algorithm, Invesco cannot fully develop its defenses, including that the basket file did not cause Plaintiffs' losses and that Plaintiffs could and should have mitigated any alleged losses. Plaintiffs' refusal to produce the arbitrage trading algorithm also threatens to delay expert discovery: Invesco may need to retain an expert to review the trading algorithm and opine on causation and damages, but any expert retained by Invesco cannot begin conducting analyses until the trading algorithm is produced, nor can any representative of Invesco review the algorithm under the Agreed Confidentiality Order. Therefore, the prompt production of Plaintiffs' algorithm is essential for Invesco's counsel to both determine whether to engage an expert and whether, and to what extent, Plaintiff Salsburg's own trading strategy and activity partially or fully caused Plaintiffs' losses or resulted in a failure to appropriately mitigate any alleged damages.

In contrast, Invesco's discovery responses and document productions have been transparent and complete. Invesco timely served its responses and objections to Plaintiffs' interrogatories and requests for production on September 9, 2022, and it made an initial production of documents on October 20, 2022. Invesco then requested that Plaintiffs propose custodians and search terms to guide Invesco's further document collection. Plaintiffs failed to respond to Invesco's request despite weeks of follow-up requests by Invesco. As a result, Invesco proposed its own custodians and search terms, to which Plaintiffs did not object. Invesco collected and reviewed documents from those custodians and, on January 5, 2023, produced 80 documents responsive to Plaintiffs' requests. Invesco's document review and production is now substantially complete.

**B. Subpoenas**

*Plaintiffs' Position*.

Plaintiffs initially issued document and deposition subpoenas to Bank of New York Mellon, which responded that the records are held outside of 100 miles of this matter, but volunteered to produce some relevant documents. Plaintiffs informed Defendant that this subpoena was incoming, but inadvertently did not send it to Defendant because they were using a third-party process server. Plaintiffs are striving to collaborate with them and will keep Defendant's informed and will obviously share with Defendant any production, as well as working jointly to schedule depositions. Plaintiffs are planning to meet and confer with Defendant about depositions ahead of the filing of this status report.

Plaintiffs also plan to conduct third-party discovery on Wedbush Securities, Inc., SageTrader, LLC, Bloomberg LP, and the DTCC. Plaintiffs shall serve all third-party subpoenas before the February 17, 2023 deadline.

*Defendant's Position*.

Following its review of Plaintiffs' December 23, 2022, document production, Invesco served subpoenas for documents on the following six third-party entities on January 9 and 10, 2023:

- Boothbay Absolute Return Strategies, LP, which Invesco believes was the first loss platform upon which Plaintiff Jeremy Salsburg executed his account;

- Boothbay Fund Management, LLC, which Invesco believes was the first loss platform upon which Plaintiff Jeremy Salsburg executed his account;

- SageTrader, LLC, a trade clearing platform that Invesco believes communicated with Plaintiff Jeremy Salsburg about the basket file;

- Precision Securities LLC, which Invesco believes was an investment executive or account manager for Jet Support Services Maintenance Trust;

- Silver Lining Asset Management, LLC, which Invesco believes was an entity managed by Plaintiff Jeremy Salsburg; and

- Wedbush Securities Inc, which Invesco believes was Plaintiff Jeremy Salsburg's broker-dealer.

Invesco complied with Federal Rule of Civil Procedure 45(a)(4) and provided notice of these subpoenas to Plaintiffs prior to serving them on the subpoena recipients. The subpoenas have a return date of January 23, 2023. Should Invesco need to serve additional subpoenas on other third parties, it intends to do so before the February 17, 2023, deadline.

With respect to Plaintiffs' November 30, 2022, subpoenas to Bank of New York Mellon, Plaintiffs did not provide Invesco with notice of the subpoenas until January 9, 2023—40 days *after* it appears they were served, and 4 days *after* the scheduled deposition. And even then, Invesco received the subpoenas only because Invesco demanded that Plaintiffs provide them after Invesco independently learned that the subpoenas appeared to have already been served.

Ongoing review of the parties' document productions reveals that these subpoena recipients—as well as the subpoena recipients Plaintiffs have identified for the first time in this joint status report—are highly likely to provide key documents and testimony. Those documents and testimony are likely to significantly influence Invesco's choice of experts and its strategy during the party depositions. For that reason, and in light of the number of third-party subpoenas Plaintiffs and Invesco intend to serve, the parties respectfully request that the Court extend the fact discovery deadlines as described above so that the parties can sequence third-party, party, and expert discovery.

### C. Depositions

*Plaintiffs' Position*.

Plaintiffs intend to depose the Invesco employees most knowledgeable about the error and its correction and fail to see how Defendant can consider that vague. Plaintiffs would also like to

depose similarly situated individuals at Bank of New York Mellon, Wedbush Securities, Inc. Bloomberg LP, and the DTCC which had materially relevant roles in this matter. Plaintiffs intend to cooperate with Defendant and third-parties on convenient scheduling and have a meet-and-confer scheduled to begin those discussions.

*Defendant's Position*.

On November 28, 2022, Plaintiffs purported to notice a Rule 30(b)(6) deposition of one or more Invesco employees by asking Invesco to "designate the person with the most knowledge as to the cause of the error . . . [and] the correction of the error in the above-captioned matter." Invesco served objections to Plaintiffs' purported Rule 30(b)(6) deposition notice on December 2, 2022, and the parties met and conferred regarding Invesco's objections on December 6, 2022. Invesco agreed to produce one or more corporate representatives at an appropriate, mutually agreeable time to provide testimony on the Plaintiffs' proposed topics, to the extent Invesco understands them. Invesco continues, however, to assert its objections that Plaintiffs' Rule 30(b)(6) notice contains impressively vague and ambiguous topics, and Invesco has reserved its right to object to and refuse to answer questions related to matters not described with reasonable particularity in the deposition notice.

As Invesco's review and analysis of Plaintiffs' document production is ongoing, Invesco has not yet noticed any depositions of Plaintiffs. Invesco has conveyed to Plaintiffs that it intends to notice a deposition of each Plaintiff (including a Rule 30(b)(6) deposition of each organizational Plaintiff), and that it may notice depositions of organizational Plaintiffs' current and former employees. Invesco and Plaintiffs have met and conferred to begin discussing the scheduling of depositions; however, as described in the proposed changes to the discovery schedule, Invesco

anticipates that the parties may need additional time to complete all depositions, particularly due to potential depositions of third parties.

### D. Discovery Motions

The parties have not filed any discovery motions to date.

*Plaintiffs' Position*.

Plaintiffs have not filed any discovery motions to date, but plan to oppose Defendant's motion to compel below.

*Defendant's Position*.

As described above, Invesco anticipates filing a motion to compel the production of Plaintiff Salsburg's arbitrage trading algorithm, if necessary.

### E. Expert Discovery

*Plaintiffs' Position*.

Plaintiffs concur with Defendant's request below to postpone expert discovery until after the close of fact discovery.

*Defendant's Position*.

Given that Plaintiffs have refused to produce Plaintiff Salsburg's trading algorithm, and because the results of the parties' third-party document and deposition subpoenas may influence whether Invesco discloses a testifying expert and which expert it discloses, Invesco respectfully requests that the Court postpone expert discovery until after the close of fact discovery.

## III. SETTLEMENT AND DISPOSITIVE MOTIONS

### A. Settlement Discussions

Following settlement discussions between the parties, a settlement conference was held by the Honorable Maria Valdez on November 9, 2022, (ECF No. 94), but a settlement was not

reached. The parties anticipate the possibility of reviving settlement discussions during or following the close of fact discovery.

### B. Dispositive Motions

*Plaintiffs' Position.*

Plaintiffs strongly disagree with Defendant's contention that Plaintiffs seek to only assert extracontractual duties. Defendant is a Registered Investment Advisor with the United States Securities and Exchange Commission and owes all of its investors, including Plaintiffs, a fiduciary duty. Furthermore, the Trust Agreement is incorporated by reference into the Prospectus which governs the operation of the Fund, and that Trust Agreement provides for the fact that investors may participate in the ETF creation and redemption process either as an Authorized Participant, or through an Authorized Participant, as Plaintiffs executed their orders through Wedbush, an Authorized Participant. Defendant makes basket files readily accessible to a wide range of investors and data providers- for free- in an industry-standard format provided by the DTCC. Defendant does this because it is reliant on market participants engaging in the creation and redemption process for its Fund to maintain minimal tracking error to the underlying index.

Rather than "dooming" Plaintiffs' case, the fact that rather than putting out a communication to its customers directly or on Marketwire, Bloomberg or on any other data provider, Invesco tried to hide the error in the basket file despite it being doctored is grossly negligent at best and "dooms" Defendant.

*Defendant's Position.*

Although discovery is still in its early stages, Plaintiffs' responses have already demonstrated that Invesco never owed an extracontractual duty to provide accurate information regarding the basket file to the Plaintiffs. Specifically, Plaintiffs have unequivocally admitted, and their document discovery has confirmed, that Plaintiffs never received any communication or

representation from Invesco concerning Plaintiffs' trading activities during the time period relevant to this case, nor have they claimed to have relied on or have produced a single marketing or other communications from Invesco disseminated more broadly that a reasonable trier of fact could conclude creates a duty to arbitrage traders like Plaintiffs to correct any error with respect to the basket file. *See, e.g.* Ex. A at 5 ("We don't have any communications from Invesco."). In fact, discovery has established—and Plaintiffs admit above—that Plaintiffs simply downloaded the basket file from the DTCC and did not receive it from Invesco.

Plaintiffs' admissions doom their case. As the Court noted in its order granting in part and denying in part Invesco's motion to dismiss, Plaintiffs can prevail on their surviving claims for gross negligence and negligent misrepresentation only by proving that Invesco owed them an extracontractual duty to provide accurate information. *See* ECF No. 44 at 5 ("The lack of contractual duty, however, does not foreclose the possibility that Invesco has an extra-contractual duty to provide accurate information to the plaintiffs."). Because Plaintiffs have admitted that Invesco never communicated with them, much less communicated with them in a way that could establish a duty to Plaintiffs, it is impossible for Plaintiffs to meet their burden of proof on that threshold issue. *See 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 220–22 (S.D.N.Y. 2015) (explaining that characteristics outside of a contractual relationship, such as marketing representations, may give rise to an extra-contractual duty, but holding that "Plaintiffs have alleged no such representations here"); *Great W. Cas. Co. v. Volvo Trucks N. Am., Inc.*, No. 08-CV-2872, 2013 WL 617068, at *6 (N.D. Ill. Feb. 19, 2013) (granting summary judgment on negligence claims because Plaintiffs failed to "identif[y] a specific fiduciary or a statutorily enacted duty that created a right of action separate from the contract itself"); *Sliter v. Cruttenden Roth, Inc.*, No. 00 C 3845, 2000 WL 1745184, at *6 (N.D. Ill. Nov. 27, 2000) (dismissing negligent misrepresentation claim against securities underwriter because, under

13

Illinois law, there is no extra-contractual duty, fiduciary or otherwise, owed by a seller of securities to a buyer of securities).

Plaintiffs' unsupported allegations above that (a) Invesco owes fiduciary duties to Plaintiffs and (b) the Trust Agreement allows Plaintiffs to participate in the creation and redemption process are not only inaccurate, they are irrelevant. Plaintiffs' breach of contract claim has been dismissed, and Plaintiffs have never asserted a breach of fiduciary duty claim.[1] The Court's order could not be more clear that Plaintiffs must prove the existence of an extra-contractual duty to support their negligence-based claims, ECF No. 44 at 8 ("the Court concludes that the plaintiffs have sufficiently alleged, for purposes of the motion to dismiss, the existence of an extra-contractual duty on the part of Invesco"), which Plaintiffs cannot do without communications or representations made outside of the contractual relationship. *See Buchalter*, 96 F. Supp. 3d at 220–22; *see also Argento SC by Sicura, Inc. v. Turtle Wax, Inc.*, No. 22 C 112, 2022 WL 2316254, at *4 (N.D. Ill. June 28, 2022) (rejecting any supposed extra-contractual duty that "has its root" in a contractual duty); *Rees-Evans v. AMP Glob. Clearing, LLC*, No. 20-CV-07169, 2021 WL 5578761, at *7 (N.D. Ill. Nov. 30, 2021) (dismissing negligence claims because the case "involves a securities commodities broker in the business of accepting orders for the purchase or sale of a commodity for future delivery, a service that is defined by an agreed-upon contract"); *Kravetz v. Bridge to Life, Ltd.*, No. 16 CV 9194, 2017 WL 4074016, at *4 (N.D. Ill. Sept. 14, 2017) (rejecting unsupported assertion that alleged existence of a fiduciary duty creates a tort-based duty independent of a contractual duty).

---

[1] And for good reason, because, as explained above, there is no fiduciary duty owed by a seller of securities to a buyer of securities under Illinois law. *Sliter*, No. 00 C 3845, 2000 WL 1745184, at *6. This is especially true when Plaintiffs admit they have never even communicated with Invesco.

There is no reason for the parties or the Court to go any further. To avoid needless additional discovery and to save the Court and the parties substantial time and resources, Invesco seeks leave to file a motion for summary judgment on that threshold, dispositive issue: that Invesco owed no duty to Plaintiffs. If the Court denies Invesco's threshold summary judgment motion, Invesco would seek leave to file a second summary judgment motion addressing any remaining aspect of Plaintiffs' claims. *See Callahan v. Chicago*, 2014 WL 2795143, at * (N.D. Ill. June 17, 2014) (recognizing that, despite "general rule" that "a party gets to move for summary judgment once," court can permit early summary judgment to resolve "a key (and likely the key) bone of contention in the case," with "a later summary judgment motion addressing any remaining aspect of plaintiff's claims").

Dated: January 11, 2023                    Respectfully submitted,


                                    /s/ Nicholas M. Berg
                                    Nicholas M. Berg
                                    John L. Wolf
                                    Anne C. Monjar
                                    **ROPES & GRAY LLP**
                                    191 North Wacker Drive
                                    31st Floor
                                    Chicago, Illinois 60606
                                    Tel: (312) 845-1200
                                    Fax: (312) 845-5538
                                    Nicholas.Berg@ropesgray.com

                                    *Attorneys for Defendant Invesco Capital
                                    Management, LLC*

                                    /s/ James Koutoulas
                                    James L. Koutoulas
                                    **Koutoulas Law, LLC**
                                    10 N. Dearborn, Suite 400
                                    Chicago, IL 60602
                                    james@koutoulaslaw.com

                                    J. Samuel Tenenbaum
                                    **Tenenbaum Law, LLC**
                                    10 N. Dearborn, Suite 400
                                    Chicago, IL 60602
                                    sam@tenenbaumlaw.com

                                    *Attorneys for Plaintiffs Jeremy Salsburg, XDG
                                    Trading, LLC, Eagle's View Partners, Ltd.,
                                    Eagle's View Management, LP, and First Horizon
                                    Bank as Trustee for Jet Support Services, Inc.*

## CERTIFICATE OF SERVICE

I, Nicholas M. Berg, hereby certify that the foregoing document was electronically filed on January 11, 2023, and will be served upon the registered parties electronically via email and the Court's ECF Notice system.

/s/ Nicholas M. Berg

Nicholas M. Berg
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Nicholas.Berg@ropesgray.com

*Attorney for Defendant Invesco Capital Management, LLC*