# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JEREMY SALSBURG; XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INVESCO CAPITAL MANAGEMENT, LLC. <br><br> Defendant. | Case No. 1:21-cv-06343 <br><br> Hon. Matthew F. Kennelly |

## JOINT STATUS REPORT

Plaintiffs Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc. (together, the "Plaintiffs") and Defendant Invesco Capital Management, LLC ("Invesco" or "Defendant"), through their respective counsel, respectfully submit the following Joint Status Report pursuant to this Court's January 18, 2023 Minute Order (ECF No. 70) requesting status on two discovery matters:

**1. 30(b)(6) Deposition.**

The parties have resolved this issue. Defendant will designate one or more knowledgeable individuals to testify with respect to the topics in Plaintiffs' 30(b)(6) Deposition Notice. Defendant reserves the right to object during the deposition, including to object that questions are beyond the scope of the Deposition Notice.

1

## 2. Production of the Algorithm – Confidentiality Order.

*Plaintiff's Position*:

Defendant seeks production of Plaintiff Salsburg's proprietary trading algorithm (the "algorithm"). As a threshold matter, the algorithm is not relevant to Plaintiff's causes of action against Defendant, nor is it relevant to Defendant's purported defenses. Defendant has failed to present any viable basis for its need to see the algorithm. Indeed, there is none. Defendant, however, seeks to divert attention from the actual evidence which, as supported by discovery, establishes the basket file was inaccurate, Defendant manually altered the underlying stock weighting information to have the doctored data pass data validation checks, broadly distributed the doctored file to brokers and data providers, did not send notice of the defective file once it became aware of it, and only sent a corrected file after the open—after Plaintiffs already suffered their damages. Plaintiff's algorithm does not and cannot impact these facts. Plaintiff's algorithm is not only highly protected (and has never been viewed by another individual except Plaintiff Salsburg) and highly profitable and has only had one material losing day in five years—the day it traded on Defendant's doctored file. Thus, non-disclosure of the algorithm will not impede Defendant's ability to defend against Plaintiff's claims because it has absolutely no relevance.

Defendant has numerous affiliates that conduct active trading, including the India Arbitrage Fund and Invesco Ltd which trades hedge fund-like strategies. The risk to Plaintiff of accidental or intentional disclosure by Defendant or its expert(s) far outweighs any relevance proffered by Defendant. Despite the lack of relevance, Plaintiff has attempted to resolve this matter in good faith. First, Plaintiff has offered to produce the basket file ingestion under the existing Protective Order. Defendant has demanded the full algorithm.

Second, Plaintiff (at Defendant's request) provided a detailed Declaration by Plaintiff Salsburg providing details about the algorithm, as well as how it works. A true and correct copy of this Declaration is attached as Exhibit A. Plaintiff Salsburg also explains that the algorithm itself is more than 100,000 lines of code and that, if the code is disclosed, he would have no way of determining who was using the algorithm. *See* Ex. A.

Third, Plaintiff offered to disclose the entire algorithm if Defendant would agree to an amended Protective Order that treated the algorithm as Extra Highly Confidential and it could only be viewed by an expert on a computer that has no internet access, disabled ports, and in a sealed, secure room the location to be agreed upon by the parties. Defendant has also objected to this offer as unduly expensive. Plaintiff, however, is willing to provide the secure computer and secure, sealed room for Defendant's expert to review the algorithm. This is not an uncommon practice in cases involving highly protected, proprietary code. *See* Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA (W.D. Tex. Apr. 15, 2021) (ECF No. 70); Stipulated Protective Order, *Carrum Technologies, LLC v. BMW of N. America, LLC*, No. 18-1645-RGA (D. Del. Sept. 6, 2019) (ECF No. 38); First Amended Protective Order Regarding the Disclosure and Use of Discovery Materials, *Unilock USA, Inc. v. Apple Inc.*, No. 2:17-cv-00470 (E.D. Tex. Jan. 9, 2018) (ECF No. 75); Stipulated Protective Order, *Open Text Corp. v. Hyland Software, Inc.*, No. 8:20-cv-02123-DOC-ADS (C.D. Cal. Apr. 12, 2021) (ECF No. 80)). In the event the Court compels disclosure, Plaintiff demands the measures comparable to the cited protective orders.

In its Position, Defendant states that it needs the entire algorithm to determine if it has a defense but proffers only 2 reasons, first which basket file was injected and when and second Mr. Salsburg's statement about one more check that <u>could</u> have been done, which he will be able to

testify to. Neither implicates the algorithem. Defendant has no plausible reason to see it as explained in Mr. Salsburg's declaration. We can't test what these unnamed experts claim. The issue of travel expense and location can easily be solved. Defendant's request amounts to no more than a fishing expedition.

Many of the facts Defendant states in its position are contested. Plaintiff got the draft of Defendants position at 6:17p.m. today even though we provided a draft at 10:15 a.m. which included a summary of the Defendant's position as contained in their prior communication. Suffice it to say the "facts" are in dispute. Additionally Defendant chose to add all of the exhibits other than Mr. Salsburg's declaration which they have had for days, to this report. We will send separately per the Court's order our proposal to the Court's proposed order email.

*Defendant's Position:*

After repeating relevance arguments that the Court has already rejected, Plaintiffs make an extraordinary and, as far as Invesco is aware, unprecedented request: that, over Invesco's objections, Plaintiffs be permitted to produce the trading algorithm at the heart of their case only to Invesco's expert, and only in a sealed room on a secure computer without internet access or functioning ports. Plaintiffs' remarkable request is inappropriate and unjustified. Indeed, Invesco has found—and Plaintiffs have identified—no case in which a court allowed a producing party, over the receiving party's objections, to produce a trading algorithm only to the receiving party's experts and only in a controlled, secure environment. Plaintiffs' proposal would also severely limit Invesco's ability to develop its defenses against Plaintiffs' allegations, including to explore whether and to what extent alleged errors in the basket file actually caused Plaintiffs' purported injuries. Further, Plaintiffs' unnecessary and unjustified protections will likely cost Invesco hundreds of thousands of dollars in extra fees and costs, while Plaintiffs have not cited a single

case in which the protections that Invesco is proposing failed to prevent inappropriate disclosure or harm to the producing party. For those reasons, and as explained in more detail below, Invesco respectfully requests that the Court order Plaintiffs to produce the trading algorithm subject to Invesco's proposed Revised Confidentiality Order.

Because the parties are at an impasse, it is Plaintiffs' burden to prove with "specific examples of articulated reasoning" that their extreme modifications to the Agreed Confidentiality Order are necessary. *E.g.*, *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (cleaned up). That is particularly true because Plaintiffs put their trading algorithm at issue by bringing this suit. Plaintiffs cannot meet their burden for a variety of independent reasons.[1]

To start, Plaintiffs' citations in support of their extraordinary request are easily distinguishable. Plaintiffs entirely cite to agreed and stipulated confidentiality orders in intellectual property disputes between competitors in an attempt to justify their extraordinary request, but Plaintiffs' citations are beside the point. Invesco does *not* agree or stipulate that Plaintiffs' algorithm, unlike the code in the patent cases involving direct competitors cited by Plaintiffs, warrants sealed-room protection. Nor have Plaintiffs identified any case in which a court ordered that a trading algorithm like Plaintiffs' be produced under the extreme protections Plaintiffs seek to impose. In fact, in one recent case, a New York court allowed a party to produce a trading algorithm subject to an "attorneys and expert eyes only" designation, but it stopped far short of

---

[1] Plaintiffs accuse Invesco of delay and hiding the ball because (1) Invesco sent a draft of its portion of this report to Plaintiffs' counsel at 6:17 p.m. on February 1, 2023; and (2) "Defendant chose to add all of the exhibits other than Mr. Salsburg's declaration which they have had for days, to this report." But Invesco previewed each of the arguments it makes in this report in its January 26, 2023 and January 31, 2023, emails to Plaintiffs' counsel. *See* Berg Decl., Exhibits 3 & 5. Invesco also asked Plaintiffs' counsel to prepare a first draft of the report on January 26, 2023, and again on January 31, 2023, but did not receive Plaintiffs' draft until the morning of February 1, 2023. *See id.* Finally, with the exception of Invesco's Proposed Revised Confidentiality Order (which it previewed as early as January 18, 2023, *see* Berg Decl., Exhibit 1), all of the exhibits Invesco "add[ed]" to the report are correspondence between counsel, documents produced by the parties in discovery, and Mr. Salsburg's January 30 declaration. And, whereas Invesco did share its Proposed Revised Confidentiality Order with Plaintiffs' counsel before submitting it to the Court, Invesco still has not seen Plaintiffs' proposed revisions.

requiring sealed-room, secure-computer, expert-only review. *See SEC Cap., LLC v. Bistrovic*, 177 A.D.3d 438, 438–39 (N.Y. App. Div. 2019) (reversing trial court's order that confidential source code algorithm be produced directly to opposing party but granting only "attorneys and expert eyes only" protection).

Plaintiffs' proposed revisions are also unwarranted. Because Plaintiffs' counsel has never articulated why the algorithm needs to be protected beyond vague and generalized speculation that Invesco will use it to compete—speculation that Invesco has repeatedly disavowed, *see, e.g.*, Declaration of Nicholas M. Berg ("Berg Decl.") ¶ 5—Invesco asked for a declaration from the algorithm's author, Plaintiff Jeremy Salsburg, with more information. Specifically, Invesco asked Mr. Salsburg to describe (1) what makes his algorithm unique from those used by other arbitrage traders, including details related to the code's complexity; (2) what steps has he has taken to safeguard his algorithm from disclosure; (3) whether he has disclosed all or some of the algorithm's code to others; (4) how disclosure of the algorithm would cause him harm; and (5) why less restrictive measures are insufficient. *See id.* ¶ 10 & Exhibit 3. In response, Mr. Salsburg provided a short declaration with almost none of the requested information. *See id.* ¶ 11 & Exhibit 4. Instead, Mr. Salsburg merely parroted his counsel's arguments, which the Court has already rejected, that the algorithm is irrelevant, and he repeated his counsel's unsupported assertion that some unnamed Invesco affiliates might somehow use the algorithm to compete against Mr. Salsburg. Those sorts of "conclusory," unexplained assertions are not enough. *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, 2010 WL 2179170, at *3–5 (N.D. Ill. June 1, 2010) ("conclusory" affidavit about potential competitive risks of discovery disclosure "do[] not carry the day"; motion for highly confidential designation denied).

Mr. Salsburg's conclusory assertions are especially insufficient here because they are belied by documents produced by other Plaintiffs and by Mr. Salsburg's own description of his algorithm. As Mr. Salsburg concedes, his algorithm merely "trades individual stocks against the basket files that describe the constituency of [ ] Index ETFs." Berg Decl., Exhibit 4 ¶ 2. Plaintiffs Eagle's View Partners, Ltd. and Eagle's View Management, LP's internal, contemporaneous summary of Mr. Salsburg's trading strategy confirms Mr. Salsburg's own description. According to the Eagle's View Plaintiffs, Mr. Salsburg's trading strategy is ███████████████ ███████████████." Berg Decl., Exhibit 9.

Nor have Plaintiffs adequately explained why or how Invesco's proposed Revised Confidentiality Order is insufficient. Mr. Salsburg asserts that Invesco "has several affiliates that . . . could profit greatly, and prevent me from running my business[,] if they utilized the Algorithm," and that Invesco "could potentially engage an expert who could use the Algorithm to compete against me." But, under Invesco's proposed Revised Confidentiality Order, Invesco, its outside counsel, and its expert will specifically agree not to use the algorithm for competitive trading activities, and Invesco has agreed that any expert it retains will be unaffiliated with Invesco or its affiliates. Rather than explain why such protections are insufficient, Mr. Salsburg speculates, without any support, that Invesco, its outside counsel, and its expert will all violate the Revised Confidentiality Order. But "courts in this district give weight to the expectation that the parties' attorneys will abide by the highest duties and ethical standards that are required of them in general and according to the protective order." *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *6 (N.D. Ill. Jan. 18, 2011).

Because Plaintiffs have not and cannot carry their burden to justify their extraordinary closed-room, secure-computer, expert-only review, the Court need not even consider the additional

7

costs Plaintiffs' proposal would impose on Invesco. *See, e.g.*, *Motorola, Inc.*, 2010 WL 2179170, at *5 (questioning whether the "Court even needs to" consider "the other side of the ledger . . . given [the producing party's] failure to show a need for extraordinarily restrictive limitations they seek to maintain"). But those costs are significant. One of Invesco's potential experts estimated that a closed-room, secure-computer, expert-only review of Mr. Salsburg's trading algorithm code would add approximately $190,000 in incremental costs over and above the costs required to review the algorithm according to Invesco's proposed Revised Confidentiality Order. *See* Berg. Decl. ¶¶ 6–8. Those incremental costs would largely be attributed to the expert's need to conduct preparatory data work to create test and scenario scripts before each session and the added burden of performing work in a secure, closed environment. *See id.* Another of Invesco's potential experts agreed that the marginal costs of closed-room review would be substantial and questioned whether it would even be possible to perform the necessary analyses, including analyzing causation and damages by simulating counterfactual trades using the corrected August 31 basket file, in that setting. *See id.* ¶ 9. Even in the patent disputes involving source code between direct competitors, courts in this district have rejected requests that source code material be produced only subject to "extensive procedures involving the establishment of a secure facility in which source code can be deposited by the producing party and reviewed by the requesting party under elaborate restrictions" precisely because of the significant burden and costs those kinds of "labyrinthian procedures" impose. *Trading Techs.*, 2011 WL 148252, at *12–13; *see also Trading Techs., Int'l v. BGC Partners, Inc.*, 2011 WL 1547769, at *5–6 (N.D. Ill. Apr. 22, 2011) (even "somewhat less confining [ ] measures for handling source code," which would allow the receiving party "to print paper copies of selected portions of the source code" would still "require [the] parties to jump through many additional hurdles" and impose unwarranted "additional burden").

Adopting Plaintiffs' proposed confidentiality order could thus jeopardize Invesco's ability to develop its algorithm-based defenses efficiently or to retain a qualified expert in the first place, despite the Court having already ruled that Invesco is entitled to assess the algorithm. And Invesco's potential algorithm-based defenses are significant.[2] Document discovery has already revealed two key facts that suggest that the basket file did not cause all—or even any—of Plaintiffs' purported losses. First, Bank of New York Mellon ("BNYM") confirmed that it ████████████████████████████████████████████████████████ Berg Decl., Exhibit 8 (emphasis added). And second, Mr. Salsburg conceded that ████████████████████ ██████████████████████████████████████. Berg Decl., Exhibit 10. At the very minimum, Invesco's expert is entitled to test Mr. Salsburg's algorithm to determine whether, in a counterfactual world in which he either ingested the revised basket file when it was released prior to the market's open or ██████████████████████████ before making trades, he still would have suffered any of his alleged losses. Plaintiffs offer no valid reason for Invesco to expend the significant and unnecessary time and resources required by Plaintiffs' unorthodox and overreaching proposal to conduct these (and many other) key analyses on the algorithm, particularly when it is Plaintiffs, not Invesco, who decided to put the algorithm at issue.

In addition, Plaintiffs' proposal likely will force the parties and the Court to expend additional time and resources resolving disputes about the details of the secure-room setup For example, one of Invesco's potential experts indicated that, assuming a closed-room, secure-computer review, the expert would require Plaintiffs to agree to specific workroom parameters, including pre-loaded software packages, upload functionality for test data, and download functionality for output. *See* Berg Decl. ¶ 8. The expert would also require Plaintiffs to accurately

---

[2] Invesco also respectfully refers the Court to its explanation of the algorithm's relevance in the parties' January 11, 2023, Joint Status Report. *See* Dkt. 68 at 5.

9

and comprehensively complete an algorithm parameters specification sheet before the expert engaged in any closed-room review, which would indicate which programming languages the expert should be prepared to encounter and provide a broad overview of the algorithm's functionality. *See id.* Plaintiffs' barebones proposal includes none of those details. Instead, it vaguely refers to a computer that has no internet access and disabled ports. Because Plaintiffs' proposal is hopelessly vague, it is all but certain that it will lead to further discovery disputes.

In contrast, Invesco's Proposed Revised Confidentiality Order would provide all the protection that is necessary. It contemplates that Mr. Salsburg should designate the algorithm as "Extra Highly Confidential Information," which would only be accessible to the court and its personnel, outside counsel and their personnel, and testifying experts—unaffiliated with Invesco or its affiliates—retained by the parties. Importantly, Invesco's proposal requires that an expert must complete a certification (1) agreeing to be bound by the confidentiality order before the expert is permitted to access the algorithm; (2) covenanting that no expert or expert's employees are currently professional traders; (3) agreeing not to use trade secrets obtained from access to the algorithm for trading; and (4) promising to provide notice to Plaintiffs if any expert or consultant with access to the algorithm changes professional status within 3 years after the conclusion of the litigation. Additionally, to guard against inadvertent or accidental disclosure to anyone other than outside counsel and experts, Invesco's proposed confidentiality order requires that Extra Highly Confidential Information be contained within a password-protected file and that the file be transmitted separately from the password. Invesco submits that these protections more than adequately guard against any concerns raised by Mr. Salsburg, who has failed to meet his burden to justify the unnecessary protections he seeks, which would certainly require Invesco to spend an

extraordinary amount of additional fees and costs and which could significantly impair Invesco's ability to defend itself from Mr. Salsburg's own allegations.

Dated: February 1, 2023

Respectfully submitted,

*/s/ Nicholas M. Berg*
Nicholas M. Berg
John L. Wolf
Anne C. Monjar
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5538
Nicholas.Berg@ropesgray.com

*Attorneys for Defendant Invesco Capital Management, LLC*

*/s/ J. Samuel Tenenbaum*
James L. Koutoulas
**Koutoulas Law, LLC**
10 N. Dearborn, Suite 400
Chicago, IL 60602
james@koutoulaslaw.com

J. Samuel Tenenbaum
**Tenenbaum Law, LLC**
10 N. Dearborn, Suite 400
Chicago, IL 60602
sam@tenenbaumlaw.com

*Attorneys for Plaintiffs Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc.*

**CERTIFICATE OF SERVICE**

I, Nicholas M. Berg, hereby certify that the foregoing document was electronically filed on February 1, 2023, and will be served upon the registered parties electronically via email and the Court's ECF Notice system.

*/s/ Nicholas M. Berg*

Nicholas M. Berg
**ROPES & GRAY LLP**
191 North Wacker Drive
31st Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Nicholas.Berg@ropesgray.com

*Attorney for Defendant Invesco Capital Management, LLC*