IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JEREMY SALSBURG; XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INVESCO CAPITAL MANAGEMENT, LLC. <br><br> Defendant. | Case No. 1:21-CV-06343 <br><br> Hon. Matthew F. Kennelly |

**JOINT STIPULATED
STATEMENT OF UNDISPUTED FACTS[1]**

**I.    THE QQQ TRUST.**

    A.   *The Trust, the Index, Portfolio Deposits, Basket Files, and Invesco QQQ Shares.*

    1.   The Invesco QQQ Trust, Series 1 (the "Trust") is an exchange traded fund ("ETF") based on the NASDAQ-100 Index (the "Index").

    2.   The Trust holds shares of the stocks in the Index.

    3.   Invesco Capital Management LLC ("Invesco") is the Sponsor of the Trust.

    4.   Invesco is a Registered Investment Advisor with the Securities and Exchange Commission.

    5.   The Bank of New York Mellon ("BNY") is the Trustee.

    6.   The investment objective of the Trust is to seek to track the investment results, before fees and expenses, of the Index.

---

[1] Pursuant to Northern District of Illinois Local Rule 56.1, the parties will also separately file their own statements of material facts along with their respective briefs.

7. The Trust is not actively managed.

8. The Trust issues fractional undivided interests in the Trust, called Invesco QQQ Shares, to Beneficial Owners.

9. Invesco QQQ Shares represent fractional undivided ownership interests in the portfolio of stocks held by the Trust (the "Portfolio").

10. The net asset value ("NAV") of an Invesco QQQ Share depends on the underlying value of the stocks in the Trust's Portfolio.

11. Invesco QQQ Shares are listed for trading on the NASDAQ.

12. The market price of an Invesco QQQ Share depends on the price that buyers are willing to pay to purchase an Invesco QQQ Share and the price that Beneficial Owners are willing to accept to sell an Invesco QQQ Share.

13. The market price of an Invesco QQQ Share is not always equal to its NAV.

14. Although Beneficial Owners can trade Invesco QQQ Shares on the NASDAQ, Invesco QQQ Shares can be created from or redeemed for the stocks in the Portfolio only through the Trust.

15. The Trustee creates and redeems Invesco QQQ Shares in Creation Units, which amount to 50,000 Invesco QQQ Shares.

16. To create a Creation Unit, parties deposit with the Trustee a specified portfolio of the Index securities and a cash payment (the "Portfolio Deposit").

17. The Portfolio Deposit that the Trustee is willing to accept to create a Creation Unit or to provide in exchange for a Creation Unit is called a Basket File.

18. The Basket File is transmitted by the Trustee, BNY, to the National Securities Clearing Corporation ("NSCC").

19. Orders for Creation Units must be placed by or through market participants with whom the Trust has an Invesco QQQ Participant Agreement ("Participant Agreement"), which include only (i) broker-dealers or other participants in the Invesco QQQ clearing process ("Authorized Participants"), or (ii) DTC Participants, *i.e.*, individuals or institutions that create Creation Units outside of the Invesco QQQ clearing process, via the Depository Trust Company facilities.

20. The creation or redemption of Creation Units by Authorized Participants and DTC Participants with whom the Trust has executed a Participant Agreement is designed to help move the market price of an Invesco QQQ Share toward its NAV.

B. *The Sponsor, the Trustee, and the Trust Agreement.*

21. The roles and responsibilities of the Trustee and the Sponsor as to the management of the Trust, including each of their respective obligations to the Trust's Beneficial Owners, are set forth in the Standard Terms and Conditions of Trust (the "Trust Agreement").

22. A true and correct copy of the Trust Agreement that governed the roles and responsibilities of the Trustee and Sponsor's obligations to the Trust's Beneficial Owners on August 31, 2020, is attached as Exhibit A.

23. The Trust Agreement is governed by New York law.

## II. THE PLAINTIFFS.

24. Plaintiff Jeremy Salsburg is an investment advisor and principal of Plaintiff XDG Trading, LLC ("XDG"), which itself is the investment advisor to the other Plaintiffs through a managed account structure.

25. Mr. Salsburg, via XDG or a related non-party entity called Silver Lining Asset Management, LLC ("Silver Lining"), managed accounts held by Plaintiffs Eagle's View Partners,

Ltd. ("EVPL"); Eagle's View Management, LP ("EVML"); and First Horizon Bank as Trustee for Jet Support Services, Inc. ("JSSI").

26. Those accounts for which Mr. Salsburg, via XDG or Silver Lining, served as trading agent, were custodied with non-party Wedbush Securities, Inc. ("Wedbush").

27. Pursuant to a first-loss agreement, Mr. Salsburg was personally liable for the first $500,000 in trading losses XDG incurred on those accounts.

28. EVPL, EVML, and JSSI authorized XDG and Mr. Salsburg to execute trades on their behalf.

29. EVPL, EVML, and JSSI did not make or instruct Mr. Salsburg or XDG to make any of the relevant trades.

30. Prior to September 1, 2020, no Plaintiff was an Authorized Participant or DTC Participant under the terms of the Trust Agreement.

31. Wedbush was an Authorized Participant under the terms of the Trust Agreement.

32. Prior to September 1, 2020, no Plaintiff directly created or redeemed Creation Units in the Trust.

33. Plaintiffs created and redeemed Creation Units in the Trust through Wedbush.

34. Prior to September 1, 2020, each Plaintiff was a Beneficial Owner of Invesco QQQ Shares.

35. Prior to September 1, 2020, Invesco did not transmit the Basket File directly to any Plaintiff.

36. Prior to September 1, 2020, Invesco had not communicated with Mr. Salsburg or any other Plaintiff about the Basket File, arbitrage trading, or any other topic.

4

### III. MR. SALSBURG'S AND XDG'S ALGORITHMIC TRADING.

37. Prior to September 1, 2020, Mr. Salsburg, through XDG acting as investment advisor to the other Plaintiffs, executed algorithmic arbitrage trading as an investment strategy.

38. As one component of that algorithmic arbitrage trading strategy, Mr. Salsburg and XDG engaged in arbitrage trading of the prices of stocks in the market against the market prices and NAV of the Trust.

39. Mr. Salsburg's and XDG's arbitrage strategy involving the Trust focused on premarket and after-hours trading.

40. Mr. Salsburg generally obtained the Trust's Basket File after the close of trading on each trading day from Wedbush, which received it from NSCC, which received it from BNY.

41. On August 28, and August 31, 2020, Wedbush was an Authorized Participant.

42. Plaintiffs were aware, prior to September 1, 2020, that inaccurate Basket File data posed a risk to Mr. Salsburg's and XDG's arbitrage trading strategy.

43. Mr. Salsburg had encountered previous minor errors in Basket Files.

44. Mr. Salsburg characterized his trading strategy to other Plaintiffs as being low risk.

### III. THE ORIGINAL & CORRECTED AUGUST 31 BASKET FILE.

45. After markets closed on August 28, 2020, BNY released a Basket File to NSCC (the "Original August 31 Basket File").

46. On August 28, 2020, Mr. Salsburg received the Original August 31 Basket File from Wedbush, which received it from NSCC.

47. August 28, 2020, was a Friday.

48. The next trading day on the NASDAQ was Monday, August 31, 2020.

49. The NASDAQ opened at 9:30 a.m. EDT on August 31, 2020.

5

50. Prior to market open on August 31, 2020, EVPL, EVML, and JSSI did not directly receive the Original August 31 Basket File.

51. Prior to market open on August 31, 2020, EVPL, EVML, and JSSI did not view or access the Original August 31 Basket File.

52. On August 31, 2020, both Apple Inc. ("Apple") and Tesla, Inc. ("Tesla"), each of which is included in the Index and the Trust, executed a stock split.

53. Mr. Salsburg was aware of the Apple and Tesla stock splits before he received the Original August 31 Basket File.

54. Mr. Salsburg did not ask Invesco or BNY, prior to 9:30 a.m. EDT on August 31, 2020, whether the Original August 31 Basket File accurately accounted for the Apple and Tesla stock splits.

55. Prior to 9:30 a.m. EDT on August 31, 2020, Invesco received inquiries from other market participants about whether the Original August 31 Basket File accurately reflected the Apple and Tesla stock splits.

56. Upon receipt of these inquiries, and prior to 9:30 a.m. EDT on August 31, 2020, Invesco contacted BNY so that BNY could correct the Original August 31 Basket File.

57. NSCC approved the revised basket file (the "Corrected August 31 Basket File") at 10:07 a.m. EDT on August 31, 2020.

**IV.    PLAINTIFFS' AUGUST 31, 2020 TRADING & ALLEGED LOSSES.**

58. Prior to 9:30 a.m. EDT on August 31, 2020, Mr. Salsburg traded in secondary markets or through pre-market trading QQQ and shares of every component member in this basket, including Apple and Tesla shares.

59. Beginning at 7:11 a.m. EDT on August 31, 2020, Mr. Salsburg used the Original August 31 Basket File to make trades in Apple and Tesla shares, as well in Invesco QQQ Shares, and other individual stocks within the QQQ Portfolio.

60. Prior to 10:07 a.m. EDT, Mr. Salsburg had not created or redeemed or caused the creation or redemption of any Creation Units on August 31, 2020.

61. Prior to 10:07 a.m. EDT, EVPL, EVML, and JSSI had not created or redeemed or caused the creation or redemption of any Creation Units on August 31, 2020.

62. Mr. Salsburg first received the Corrected August 31 Basket File from SageTrader LLC ("SageTrader") at 11:32 a.m. EDT on August 31, 2020.

63. SageTrader was the introducing broker and point of contact for all matters Plaintiffs had regarding Plaintiffs' Wedbush accounts.

64. SageTrader was not an Authorized Participant on August 31, 2020.

65. After August 31, 2020, Mr. Salsburg changed his trading algorithm to identify red flags like the errors in the Original August 31 Basket File.

66. Mr. Salsburg believes that the post-August 31, 2020, changes he made to his algorithm would have prompted him to question Invesco or BNY about the accuracy of the Original August 31 Basket File.

67. After August 31, 2020, Mr. Salsburg attempted to receive Basket Files directly from Invesco, rather than from DTCC (through Wedbush and SageTrader).

Dated: May 11, 2023 Respectfully submitted,

<u>/s/ James Koutoulas</u>

James L. Koutoulas
**Koutoulas Law, LLC**
10 N. Dearborn, Suite 400
Chicago, IL 60602
james@koutoulaslaw.com

J. Samuel Tenenbaum
**Tenenbaum Law, LLC**
10 N. Dearborn, Suite 400
Chicago, IL 60602
sam@tenenbaumlaw.com

*Attorneys for Plaintiffs Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, and First Horizon Bank as Trustee for Jet Support Services, Inc.*

<u>/s/ Nicholas M. Berg</u>

Nicholas M. Berg
Philip P. Ehrlich
John L. Wolf
Ann C. Monjar
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
T: 312.845.1200
F: 312.845.5538
Nicholas.Berg@ropesgray.com

*Counsel for Defendant Invesco Capital Management, LLC*

**CERTIFICATE OF SERVICE**

    I, Nicholas M. Berg, hereby certify that the foregoing document was electronically filed on May 11, 2023, and will be served upon the registered parties electronically via email and the Court's ECF Notice system.

                                                  /s/ Nicholas M. Berg

                                                  Nicholas M. Berg
                                                  **ROPES & GRAY LLP**
                                                  191 North Wacker Drive, 32nd Floor
                                                  Chicago, Illinois 60606
                                                  Tel: (312) 845-1200
                                                  Fax: (312) 845-5522
                                                  Nicholas.Berg@ropesgray.com

                                                  *Attorney for Defendant Invesco Capital Management, LLC*