# Exhibit 1

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JEREMY SALSBURG; XDG TRADING, LLC; EAGLE'S VIEW PARTNERS, LTD.; EAGLE'S VIEW MANAGEMENT, LP; and FIRST HORIZON BANK AS TRUSTEE FOR JET SUPPORT SERVICES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>INVESCO CAPITAL MANAGEMENT, LLC.<br><br>Defendant. | Case No. 1:21-CV-06343<br><br>Hon. Matthew F. Kennelly |

## DECLARATION OF RUDOLF REITMANN IN SUPPORT OF DEFENDANT INVESCO CAPITAL MANAGEMENT, LLC'S MOTION FOR SUMMARY JUDGMENT

June 2, 2023

1. I, Rudolf Reitmann, hereby declare, pursuant to 28 U.S.C. § 1746, that the following facts are true and accurate to the best of my knowledge and belief. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and am I am competent to testify to the same.

**Background**

2. I am Director of ETF and UIT Operations Products at Invesco Capital Management LLC ("Invesco"), a position that I have held since October 2006.

3. Invesco is one of the world's largest sponsors of exchange-traded funds ("ETFs"). ETFs are bundles of securities that individual investors can buy or sell on exchanges. ETFs can track the outcome of a broad set of investments, such as stocks, bonds, currencies, futures, or commodities.

1

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

4. ETF sponsors buy the ETF's underlying investments on behalf of, and as agent for, the ETF; a trustee manages the administration of the ETF and its portfolio, including by dividing the ownership of the ETF—and therefore indirect ownership of those investments—into shares and selling them to and repurchasing them in bulk from authorized participants. In turn, the authorized participants divide the bulk shares—called creation units—and sell them to investors, called beneficial owners. When purchasing an individual share, a beneficial owner obtains a small interest in the ETF's overall investment. Beneficial owners never transact directly with the trustee, the sponsor, or the trust, however, unless the beneficial owners are also authorized participants.

5. Prior to September 1, 2020, Invesco was not a financial advisor, investment advisor, or any other type of advisor or fiduciary to Jeremy Salsburg, XDG Trading, LLC, Eagle's View Partners, Ltd., Eagle's View Management, LP, First Horizon Bank, or Jet Support Services, Inc. (collectively, the "Plaintiffs"). Nor is it an advisor to the Trust or have any management obligations to it.

**The Operations of the Invesco QQQ Trust, Series 1**

6. Invesco is the Sponsor of the Invesco QQQ Trust, Series 1 (the "Trust"), which is one of Invesco's largest ETFs and is the second-most traded ETF in the United States. The Trust is a unit investment trust designed to track the investment results and mirror the performance (before fees and expenses) of the Nasdaq-100 Index (the "Index").

7. The Index is comprised of the 100 largest non-financial companies on the Nasdaq exchange. Members of the Index are at the forefront of transformative innovation, including in augmented reality, cloud computing, big data, mobile payments, streaming services, and electric vehicles. The Trust holds a portfolio of shares of each of these 100 companies, including Microsoft, Apple, Alphabet, Amazon, Meta, and other leading companies across a variety of sectors and

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

industries. The Trust is the highest-rated large-cap growth fund based on total returns over the past 15 years.

8. By purchasing a share of the Trust, a Beneficial Owner ("Beneficial Owner") gains investment exposure to each of these companies. Collectively, there are hundreds of millions of outstanding QQQ Shares owned by millions of individual Beneficial Owners.

9. Bank of New York Mellon ("BNYM") is the Trust's Trustee.

10. At the end of each trading day, the Trustee, BNYM, compiles what is referred to as a "Basket File." A Basket File informs a select class of market participants (referred to as "Authorized Participants" or "APs") with whom the Trust has preexisting contracts (called "Authorized Participant Agreements") of the composition of securities that the APs may deliver or receive in exchange for large blocks of the Trust, called "Creation Units." The processes of delivering to and receiving from the Trust Creation Units by Authorized Participants are referred to as "creation" and "redemption," respectively. Another group of market participants, called DTC Participants, creates or redeems Creation Units outside of the Invesco QQQ clearing process through the Depository Trust Company's facilities.

11. The Basket File serves as a price: it is an offer to Authorized Participants and DTC Participants to create or redeem Creation Units. It does not necessarily reflect the composition of securities that the Trust holds at any given moment.

12. BNYM's responsibility for compiling and distributing Basket Files is established by a contract, the Standard Terms and Conditions of Trust (the "Trust Agreement"). The Trust Agreement requires that BNYM, not Invesco, calculate and transmit daily Basket Files to the National Securities Clearing Corporation ("NSCC"), the Trust's data repository and clearing house. Invesco sometimes reviews or verifies BNYM's Basket Files, but under the Trust

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

Agreement, the calculation and dissemination of the Basket Files is the sole responsibility of BNYM.

13. Because shares of the Trust are traded on the Nasdaq, the market value of a share of the Trust is determined by the price buyers are willing to pay for the share. In contrast, a share's net asset value (or "NAV") depends only on the combined underlying value of the stocks in the Trust's Portfolio.

14. Creation and redemption of Creation Units by Authorized Participants and DTC Participants is governed by the Basket File and is intended to achieve the goal of balancing the Trust's market value and NAV so that they are aligned or close to aligned.

15. Creation and redemption transactions help balance the market value and NAV because they allow for Authorized Participants and DTC Participants to arbitrage away price differences. For instance, when the market price of a share of the Trust exceeds its NAV, Authorized Participants and DTC Participants buy the components of the Trust's portfolio and use them to create Creation Units, increasing supply of the Trust's shares and reducing their cost. Inversely, when the market price of a share of the Trust is below its NAV, Authorized Participants and DTC Participants redeem Creation Units for the component stocks, reducing supply of the Trust's shares and increasing their price.

16. Usually, the NAV and market price align. But when they do not, the creation and redemption process described above soon establishes an equilibrium. Thus, arbitrage trading by Authorized Participants and DTC Participants through the creation and redemption process benefits the Trust by making it attractive to investors hoping to mimic the Index's returns.

17. A Basket File is not intended by the Trustee, the Trust, or the Sponsor to serve any purpose other than facilitating creations and redemptions by Authorized Participants and DTC Participants.

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

Specifically, a Basket File is not meant to provide market participants who are not Authorized Participants or DTC Participants with data for purposes of secondary market trading. Nor is a Basket File intended to indicate to anyone (including APs and DTC Participants) what the Trust's Portfolio contains at any given moment.

18. Invesco takes steps to limit the availability of Basket Files to Authorized Participants and DTC Participants. For example, the landing page to access data on Invesco's ETF Capital Markets website, including creation/redemption specifications and basket details, specifies that the "data requested is intended exclusively for entities who have executed a participation agreement with the funds," and only Authorized Participants can log in to receive the data through Invesco's website. I have attached a screenshot showing the landing page for Invesco's ETF Capital Markets data as Exhibit A.

19. Basket Files are not intended to reach non-APs and non-DTC Participants because only creation and redemption play a beneficial role in calibrating the Trust's market price and NAV. Only Authorized Participants and DTC Participants may create or redeem Creation Units. Beneficial Owners and other market participants do not play a direct role in encouraging the market price to move toward the NAV.

**The Plaintiffs**

20. No Plaintiff is an Authorized Participant or DTC Participant.

21. Because they are not Authorized Participants, no Plaintiff—including Jeremy Salsburg and his firm, XDG Trading, LLC ("XDG")—is authorized to create or redeem Creation Units directly with the Trust. Instead, to the extent any Plaintiff does participate in creation or redemption, the Plaintiff must do so through an Authorized Participant or DTC Participant.

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

22. Nor do Plaintiffs receive the basket files directly from the Trust, BNYM, or Invesco. Rather, Mr. Salsburg and XDG receive the basket files either directly or indirectly from an Authorized Participant, which, in turn, retrieves the basket files from the Depository Trust Clearing Corporation ("DTCC").

23. Based on Mr. Salsburg's allegations and the documents produced in discovery, I understand that Mr. Salsburg and XDG are arbitrageurs. Because they are not Authorized Participants or DTC Participants, they cannot create or redeem Creation Units and so they must engage in another form of arbitrage: "front-running," whereby Mr. Salsburg and XDG utilize information contained within the Trust's basket files to algorithmically execute premarket and after-hours trades outside of the Trust based on their expectations about the balance and value of the Trust's component stocks and the Trust's need to make trades in the market. This risky trading benefits only the trader (and/or his client) and does so at the expense of the Trust and its millions of individual Beneficial Owners.

24. Invesco does not condone or encourage Plaintiffs' trading or any form of front-running arbitrage trading. In fact, until this lawsuit, Invesco was not aware of any Plaintiffs' existence, much less whatever trading strategies they used or trades they have made. Invesco certainly does not approve of and has never encouraged Plaintiffs, or any front-running arbitrage traders, to use Basket Files to front-run the Trust. That is because front-running makes it more difficult and expensive for the Trust to rebalance, which ultimately harms the Trust's Beneficial Owners.

25. In my experience, premarket and after-hours trading are particularly risky because there is less liquidity in the markets than there ordinarily would be during regular trading hours.

26. Further, it is Invesco's view that premarket and after-hours trading, such as the trading strategy employed by Mr. Salsburg and XDG on behalf of themselves and the other Plaintiffs, does

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

not contribute towards balancing the Trust's NAV with its market value and is not beneficial in any other way to the Trust or its Beneficial Owners.

**The August 31, 2020 Basket File**

27. On Friday, August 28, 2020, after the close of trading, BNYM created a Basket File for the following trading day, Monday, August 31, 2020. BNYM disseminated this Basket File via DTCC. Invesco reviewed and approved of the Basket File, but, under the Trust Agreement, BNYM was solely responsible for calculating the Basket File and Invesco was entitled to rely on BNYM's calculations.

28. Also on Friday, August 28, 2020, both Apple Inc. ("Apple") and Tesla Inc. ("Tesla") announced stock splits to occur on the following trading day, Monday, August 31, 2020.

29. Early in the morning on August 31, 2020, Invesco received inquiries from Authorized Participants indicating that the Basket File for August 31, 2020, appeared to contain errors. Specifically, Authorized Participants observed that the Apple and Tesla stock splits appeared to have accidentally been doubly accounted for in the Basket File by BNYM. Because a Basket File contains a fixed number of shares, this mistake by BNYM also caused the number of shares of the other stocks in the Trust to be underrepresented.

30. Invesco conveyed this information to BNYM on the morning of August 31, 2020, prior to market open.

31. BNYM then created a revised Basket File that accurately reflected the Apple and Tesla stock splits and sent the revised Basket File to DTCC prior to market open.

32. Later, at 9:45 a.m. EDT, after BNYM had sent the revised basket file to NSCC, Invesco also separately emailed the revised August 31, 2020 Basket File directly to Authorized Participants noting the revisions

DocuSign Envelope ID: F94BD3A2-4E98-46BD-87EA-4678E836B881

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on: June 2, 2023

Respectfully Submitted,

*[DocuSigned by: 1AE29FB9C13D4ED...]*

Rudolf Reitmann





ETF Capital Markets

## Are you an authorized participant?

The data requested is intended exclusively for entities who have executed a participation agreement with the funds, i.e., "AuthorizedParticipants." Although Invesco Capital Markets has taken reasonable efforts to ensure that the data is accurate and current, Invesco offers no warranty as to the accuracy of this data. By downloading this data, you are representing that you are an Authorized Participant, may legally receive the data, and agree that Invesco shall not be held liable for any errors or omissions with respect to this data.

The data included in the file is as of the date displayed in the file, and is believed to be accurate; however, Invesco makes no representation or warranty as to the accuracy of this information. This information is subject to change, and Invesco undertakes no

Yes, I am an authorized participant, exchange or data provider

No, I'm not an authorized participant

**US ETF Capital Markets**

Prospectus | Legal

NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE

This information is intended for US Authorized Participants and/or Market Makers only.

Invesco Distributors, Inc., is the US distributor for Invesco Ltd.'s Retail Products and Collective Trust Funds.

Invesco Capital Management LLC, investment adviser and Invesco Distributors, Inc., ETF distributor are indirect, wholly owned subsidiaries of Invesco Ltd.

Shares are not individually redeemable and owners of the Shares may acquire those Shares from the Funds and tender those shares for redemption to the Funds in Creation Unit aggregations only, typically consisting of 10,000, 50,000, 75,000, 80,000, 100,000, 150,000 or 200,000 Shares.

©2023 Invesco Ltd. All rights reserved.